**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>*Defendants*. | Case No. 1:26-cv-03263-LLA |

**PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY**

Plaintiffs respectfully move for limited expedited discovery.[1] Plaintiffs seek four narrow categories of documents and answers to two interrogatories: (1) the records Defendants Department of Justice ("DOJ") and Department of Homeland Security ("DHS") have already identified as responsive to Freedom of Information Act ("FOIA") requests concerning the deployment of federal law enforcement personnel to polling places, ballot drop boxes, and election offices, which have been and are being produced on a rolling basis in *Democratic National Committee v. U.S. Department of Justice*, No. 1:26-cv-00825 (D.D.C. Mar. 10, 2026) [hereinafter "*DNC*"]; (2) the records DOJ has already identified as responsive in *Citizens for Responsibility & Ethics in Washington v. U.S. Department of Justice*, No. 1:25-cv-04426 (D.D.C. Dec. 19, 2025) [hereinafter "*CREW*"], concerning DOJ's use of DHS databases to verify the citizenship of voters and its plans to match voter data against other federal data; (3) documents sufficient to show any

[1] Pursuant to Local Civil Rule 7(m), counsel for Plaintiffs conferred with counsel for Defendants. Defendants oppose this Motion.

assessment, analysis, or determination regarding actual or anticipated threats relating to or during the 2026 General Election in the vicinity of voting locations, including, but not limited to, any polling place, vote center, early-voting site, ballot drop box, election office, or other location at which ballots are cast, collected, processed, tabulated, canvassed, or certified for the November 3, 2026 General Election, including its associated early-voting, canvass, and certification periods; (4) the two internal DHS directives, described in public reporting and in the Complaint, that established and expanded what DHS has called the "Unlawful Voter Initiative"; (5) an interrogatory answer identifying all policies, training materials, and operational standards Defendants use to determine whether personnel may be deployed to or conduct enforcement activities in proximity to voting locations, including, but not limited to, any polling place, vote center, early-voting site, ballot drop box, election office, or other location at which ballots are cast, collected, processed, tabulated, canvassed, or certified for the November 3, 2026 General Election, including its associated early-voting, canvass, and certification periods; and (6) an interrogatory answer identifying all policies, training materials, or criteria Defendants use to ensure their investigations do not inadvertently or unlawfully target or otherwise interfere with the voting rights of U.S. citizens during voting periods.[2]

This request is narrow, targeted, and timely in light of: (a) Defendants' repeated refusals to rule out deploying armed federal agents to the vicinity of voting locations, including Defendant Mullin's statement on August 31, 2026, that ICE officers "will be where we need to be," Compl. ¶¶ 103–13; and (b) the fact that many of the requested documents have already been collected and reviewed by Defendants in other litigation, so the burden of producing them here is minimal. With Election Day rapidly approaching, Plaintiffs respectfully request expedited discovery that would

[2] *See* Exhibit A (Requests for Production) and Exhibit B (Interrogatories).

shed light on Defendants' actions and plans and allow Plaintiffs to seek emergency relief as necessary.

## STATEMENT OF FACTS

Plaintiffs are nine civil rights organizations and labor unions whose members include Black, Latino, and Asian American voters, naturalized citizens, and members of mixed-status families. Compl. ¶¶ 12, 15–68. On September 18, 2026, Plaintiffs filed this action asserting a single claim under Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b). *Id.* ¶¶ 235–42. Plaintiffs allege that Defendants have engaged in an escalating course of intimidating conduct ahead of the midterm elections that has caused Plaintiffs' members and other voters to credibly fear that participating in this November's elections will subject them to intimidation, threats, or coercion, including physical force and increased surveillance by the federal government. *Id.* ¶¶ 171–234. Defendants, for example, have repeatedly declined to rule out placing federal agents at or near polling places: Defendant Mullin at his confirmation hearing and again on August 31, 2026, *id.* ¶¶ 106, 108, 110; Defendant Homan on September 13, 2026, when he stated that "there is no sensitive location policy," *id.* ¶ 112; and Defendant Patel before the Senate on September 15, 2026, *id.* ¶ 113. The Administration has rescinded the "protected area" policy that limited immigration enforcement at schools, churches, and other sites that commonly serve as polling places, *id.* ¶ 101, and removed from DOJ's website the 2017 election-offenses manual that warned against stationing federal agents at the polls, *id.* ¶¶ 163–65. DHS has directed a "surge" of Homeland Security Investigations agents into at least nine states between early September and mid-October under its "Unlawful Voter Initiative," relying on data that DHS's own personnel acknowledge will sweep in U.S. citizens. *Id.* ¶¶ 114–21. And federal agents were reported at or near active voting locations in several states during the 2026 primaries. *Id.* ¶¶ 169, 180, 195, 203. Plaintiffs' members have

already responded by changing how, where, and whether they will vote and by withdrawing from voter assistance and election protection work. *Id.* ¶¶ 177, 193–94, 204–06, 209, 214–15, 219–21, 225, 229, 233.

The documents that would show the actions Defendants have taken and the plans they have developed are not public, but many have already been identified in two FOIA cases before this Court. In the *DNC* case, the DNC requested records from eleven components of three agencies—Defendants DOJ and DHS and the Department of Defense—related to the deployment of military or law enforcement personnel to polling places, ballot drop boxes, and election offices. Compl. Exs. 1–8, *DNC*, No. 1:26-cv-00825 (D.D.C. Mar. 10, 2026), Dkt. Nos. 1-1 to 1-8. As of October 2, 2026, only one of the eleven components was continuing to process potentially responsive records, while the ten other components had completed processing and production of responsive records by October 1, 2026. Min. Order, *DNC*, No. 1:26-cv-00825 (D.D.C. Oct. 3, 2026); J. Status Rep. at 1, 4, *DNC*, No. 1:26-cv-00825 (D.D.C. Oct. 2, 2026), Dkt. No. 29. In the *CREW* case, the court ordered expedited processing of records concerning DOJ's collection of state voter data, its plans to match that data against other federal data, and its use of DHS's SAVE system to verify the citizenship of voters. Order, *CREW*, No. 1:25-cv-04426 (D.D.C. Feb. 19, 2026), Dkt. No. 14; Mem. Op. & Order, *CREW*, No. 1:25-cv-04426 (D.D.C. Mar. 24, 2026), Dkt. No. 18. As of June 22, 2026, DOJ represented to the court that it had "completed processing and production of all potentially responsive records that were located by its search." J. Status Rep. at 1, *CREW*, No. 1:25-cv-04426 (D.D.C. June 22, 2026), Dkt. No. 29.

This case seeks a declaratory judgment and an injunction barring Defendants from engaging in such unlawful intimidation and interference with the right to vote. Compl. ¶ 14. Absent a grant of expedited discovery, the relevant information requested herein is unlikely to be produced

to Plaintiffs before the end of voting for the November 3, 2026 General Election under the default procedural rules. Defendants have sixty days from service to respond to the Complaint, Fed. R. Civ. P. 12(a)(2), which places their response deadline on or about November 17, 2026, at the earliest, weeks after the polls close. The Rule 26(f) conference, and with it the start of discovery, would come later still.

**ARGUMENT**

Pursuant to Federal Rule of Civil Procedure 26(d)(1), the Court may authorize discovery before the Rule 26(f) conference. When considering a request for expedited discovery, courts in this district apply a "reasonableness" test. *See Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 103 (D.D.C. 2018).[3] Under that test, courts consider an "inexhaustive set of guidelines," including: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* at 104 (citation modified). When applying the reasonableness test, courts evaluate the "reasonableness of the request in light of all of the surrounding circumstances." *Guttenberg*, 26 F. Supp. 3d at 98. Plaintiffs' requests for limited, expedited discovery easily satisfy this standard.

*First*, the developments described above raise grave concerns about imminent harm to Plaintiffs, their members, and the voters they serve. Plaintiffs are carefully evaluating the possibility and necessity of seeking a preliminary injunction and respectfully request this limited,

[3] The other test is the *Notaro* test, which is "adapted from the preliminary injunction standard." *Dunlap*, 319 F. Supp. 3d at 103 (citing *Notaro v. Koch*, 95 F.R.D. 403, 405 n.4 (S.D.N.Y. 1982)). But courts in "this Circuit have recently found that the reasonableness approach [is] more suited to the application of the Court's broad discretion in handling discovery." *Id.* (citing *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014)) (citation modified).

expedited discovery so that they can assess the necessity to seek emergency relief. Plaintiffs' claim turns in part on what Defendants have instructed their agents to do at and near voting locations, and many Defendants have either refused to rule out sending federal agents to polling places or indicated a willingness to do so under certain circumstances notwithstanding federal law and apparently possessing internal records regarding these matters. Compl. ¶¶ 103–13, 119–21. Courts in this district have recognized that the time-limited nature of an election cycle justifies expedition that would not be warranted in an ordinary case, because injuries to voters cannot be remedied once the election passes. *See CREW*, 826 F. Supp. 3d 73, 87 (D.D.C. 2026) (explaining that "[b]ecause the election cycle is inherently time-limited, delaying a response to CREW's FOIA requests would inevitably compromise the public's interest in understanding the nature of the allegedly ongoing effort before the upcoming elections pass by"); Min. Order, *DNC*, No. 1:26-cv-00825 (D.D.C. Aug. 22, 2026) (describing a processing timeline extending past the midterms as "an unacceptable delay given the proximity of the 2026 midterm elections").

*Second*, Plaintiffs' discovery requests are narrowly tailored. Plaintiffs only seek four categories of documents (including documents Defendants already have compiled) and answers to two interrogatories. Request No. 1 covers documents that Defendants have already identified, collected, and reviewed in the *DNC* case, limited to the eight requests directed to DOJ and DHS components. Request No. 2 covers only the subset of documents requested in *CREW* that concern the mechanisms by which the Complaint alleges the Unlawful Voter Initiative reaches Plaintiffs' members: DOJ's use of the SAVE program to verify the citizenship of voters, its plans to match voter data against other federal data, and referrals of voters for investigation. Compl. ¶¶ 114–21, 124, 127. Request No. 3 asks for documents sufficient to show the policies currently governing armed federal personnel near voting locations. Request No. 4 asks for two specific DHS directives

that the press has already described and that the Complaint identifies by date and content. *Id.* ¶¶ 114–21. Interrogatory No. 1 seeks information regarding any policies, training, or criteria Defendants use, have used, or plan to use to avoid conducting operations including within, at, or in proximity to voting locations. Interrogatory No. 2 asks Defendants to identify all policies, training materials, or criteria Defendants use, have used, or plan to use to ensure their operations do not inadvertently or unlawfully target or otherwise intimidate, coerce, or threaten U.S. citizens during voting periods. Each request is tailored to obtain information central to Plaintiffs' claims. These requests are not overbroad. *Cf. Dunlap*, 319 F. Supp. 3d at 104 (noting "Plaintiff's sprawling list of nineteen specific document categories," whereas here, Plaintiffs seek specific and narrow discovery).

*Third*, Plaintiffs have a clear and urgent purpose in seeking expedited discovery: The relief Plaintiffs seek depends on whether, where, and how Defendants may or intend to deploy law enforcement during voting, and only Defendants know the answer. The interrogatories serve the same purpose. If Defendants have adopted safeguards or policies against federal agents going to voting locations or targeting U.S. citizens, they should welcome the opportunity to identify them; if they have not, that fact bears directly on the need for injunctive relief. Expedited discovery will also be relevant to assessing potential emergency relief to prevent further harms before it is too late.

*Fourth*, Defendants are not unreasonably burdened by expedited discovery. Defendants have already identified, located, and reviewed many documents responsive to Request Nos. 1 and 2 in the *DNC* and *CREW* litigation. Producing those documents here requires minimal time and cost from Defendants. Request No. 3 seeks documents sufficient to show current policy, not every relevant communication. Request No. 4 seeks two already-identified documents that DHS can

retrieve by name. Lastly, the interrogatories call for only two sworn answers about Defendants' own practices.

*Fifth*, the timing of this request weighs in Plaintiffs' favor. Plaintiffs seek limited expedited discovery because the ordinary discovery process likely would not produce material on a timeline necessary to address the violations that give rise to Plaintiffs' claim. Thus, it is necessary for Plaintiffs to make this request now.

Plaintiffs have good cause for expedited discovery. Defendants' refusal to rule out armed federal agents at the polls, coupled with the apparent dismantling of the policies that once kept them away, raises serious concerns that Plaintiffs and the voters they serve are at grave risk. Plaintiffs respectfully request this Court set a deadline by October 9 for Defendants' response and October 12 for any reply. Plaintiffs also respectfully ask that this Court grant the Motion and direct Defendants to produce documents responsive to Plaintiffs' Requests for Production within five calendar days of the Court's order. Plaintiffs respectfully request that Defendants complete document productions and serve sworn answers by October 19, 2026.

**CONCLUSION**

For the reasons above, this Court should grant Plaintiffs' Motion and request for expedited briefing.

Dated: October 5, 2026

Respectfully submitted,

*/s/ John Cusick*
John S. Cusick*
Brittany Carter***
NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006

Leah Wong***
Jane Shim***
Charles Jiang***
Patrick Stegemoeller***
Dinesh McCoy***
Niji Jain***

ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND
99 Hudson Street, 12th Floor
New York, NY 10013

/s/Hayden Johnson
Hayden Johnson (DC Bar No. 1671830)
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Avenue NW #163
Washington, DC 20006
(202) 579-4582
Hayden.Johnson@protectdemocracy.org

Jessica A. Marsden*
PROTECT DEMOCRACY PROJECT
101 Glen Lennox, Suite 300
Chapel Hill, NC 27517

Benjamin R. Farley (DC Bar No. 90042585)
Imani Franklin (DC Bar No. 90006160)
NATIONAL IMMIGRATION LAW CENTER
PO Box 34573
Washington, DC 20043

Tel: (212) 965-2200
Fax: (202) 226-7592
jcusick@naacpldf.org

I. Sara Rohani* (DC Bar No. 1781155)
Hayley Hahn** (DC Bar No. 90045921)
NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.
700 14th Street NW, Ste. 600
Washington, DC 20005

Miranda Galindo***
Rex Chen***
LATINOJUSTICE PRLDEF
475 Riverside Drive, #1901
New York, NY 10115

Kristen M. Clarke (DC Bar No. 973885)
Anthony P. Ashton (D.D.C. Bar No. MD25220)
Max L. Meyers***
NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE
4805 Mt. Hope Dr.
Baltimore, MD 21215

*Counsel for Plaintiffs NAACP, MFA, OCA, NUL, and MN8*

Jasleen K. Singh*
Patrick Berry*
BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271

Hayne Yoon*
BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW
777 6th St. NW, Suite 1100
Washington, DC 20001

*Counsel for Plaintiff SEIU*

Norman L. Eisen (DC Bar No. 435051)
Pooja Chaudhuri (DC Bar No. 888314523)
Sofia Fernandez Gold (DC Bar No. 90010196)
Harold Craig Becker (DC Bar No. 371239)
Tianna Mays (DC Bar No. 90005882)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003

*Counsel for Plaintiffs AFT, UFCW, and IUPAT*

* *Admitted pro hac vice*
** *Admission to D.D.C. pending*
*** *Pro hac vice application forthcoming*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

*/s/ John Cusick*
John Cusick
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006