## EXHIBIT A: REQUESTS FOR PRODUCTION

Pursuant to Federal Rules of Civil Procedure 26 and 34 and the Court's Order granting Plaintiffs' Motion for Expedited Discovery, Plaintiffs request that Defendants produce the documents described below within five days of the Court's Order or by such other date as the Court sets.

## DEFINITIONS

1. **"Defendants," "You," and "Your"** mean the U.S. Department of Homeland Security ("DHS"), including its components U.S. Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations, U.S. Customs and Border Protection, U.S. Citizenship and Immigration Services, and the Federal Protective Service; Markwayne Mullin, in his official capacity; David Venturella, in his official capacity; the U.S. Department of Justice ("DOJ"), including its Civil Rights Division, Criminal Division, and the Offices of the Attorney General and Deputy Attorney General; Todd Blanche, in his official capacity; the Federal Bureau of Investigation ("FBI"); Kash Patel, in his official capacity; and Thomas Homan, in his official capacity as White House Executive Associate Director of Enforcement and Removal Operations; together with the officers, employees, and agents of each.

2. **"Document"** has the full meaning given to "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), and includes drafts and non-identical copies.

3. **"*DNC* FOIA Requests"** means the eight Freedom of Information Act requests, dated October 17 and 21, 2025, that the Democratic National Committee submitted to the FBI, the DOJ Civil Rights Division, the DOJ Criminal Division, the DOJ Office of Information Policy, U.S. Customs and Border Protection, the Federal Protective Service, ICE, and DHS, attached as Exhibits 1 through 8 to the complaint in *Democratic National Committee v. U.S. Department of Justice*, No. 1:26-cv-00825 (D.D.C. Mar. 10, 2026), Dkt. No. 1. Copies are attached as Attachment 1.

4. **"*CREW* FOIA Requests"** means the Freedom of Information Act requests that Citizens for Responsibility and Ethics in Washington submitted to the DOJ Criminal Division and Civil Division on September 4, 2025, and to the DOJ Civil Rights Division on November 4, 2025, attached as Exhibits A and E to the complaint in *Citizens for Responsibility & Ethics in Washington v. U.S. Department of Justice*, No. 1:25-cv-04426 (D.D.C. Dec. 19, 2025), Dkt. No. 1. Copies are attached as Attachment 2.

5. **"Identified as Responsive"** means, as to any *DNC* FOIA request or *CREW* FOIA request, every Document that any Defendant has located, collected, or flagged as potentially or actually responsive to that request, whether or not it has been produced, withheld, or listed on any *Vaughn* index.

6. **"Voting Location"** means any polling place, vote center, early-voting site, ballot drop box, election office, or other location at which ballots are cast, collected, processed, tabulated, canvassed, or certified for the November 3, 2026 general election, including its associated early-voting, canvass, and certification periods (the "2026 General Election").

7. **"Includes"** shall be construed expansively and not as limiting in any way.

8. **"And" and "or"** are terms of inclusion, not exclusion.

## INSTRUCTIONS

1. Produce responsive Documents within five days of the Court's order granting Plaintiffs' Motion for Expedited Discovery, on a rolling basis, by secure electronic transfer to counsel for Plaintiffs at hhahn@naacpldf.org and jcusick@naacpldf.org.
2. Unless otherwise stated, the relevant period is January 20, 2025 through the date of production.
3. Documents already collected in response to the *DNC* FOIA Requests or the *CREW* FOIA Requests may be produced in the form in which they were collected.
4. Produce electronically stored information in reasonably usable form with metadata sufficient to identify custodian, author, recipients, and dates of creation and modification.
5. If any Document is withheld or redacted on a claim of privilege, produce the non-privileged portion and provide a log complying with Federal Rule of Civil Procedure 26(b)(5)(A). If You object to part of a Request, state the objection with specificity and produce Documents responsive to the remainder.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All Documents that any Defendant has Identified as Responsive to the *DNC* FOIA Requests, together with any *Vaughn* index, draft *Vaughn* index, or other written description of withheld Documents prepared in that case.

**REQUEST NO. 2:**

All Documents that DOJ has Identified as Responsive to the *CREW* FOIA Requests, together with any *Vaughn* index, draft *Vaughn* index, or other written description of withheld Documents prepared in that case, and that concern (a) DOJ's use of DHS's Systematic Alien Verification for Entitlements (SAVE) system, or any other DHS data system, to verify the citizenship of voters or voter registrants; (b) any plan or practice to compile, aggregate, match, link, or otherwise combine voter data obtained from state or local election officials with data held by DHS or any other federal agency; or (c) the referral of any voter or voter registrant to any Defendant for investigation, prosecution, or removal.

**REQUEST NO. 3:**

All Documents pertaining to any assessment, analysis, or determination regarding actual or anticipated threats relating to or during the 2026 General Election in the vicinity of a Voting Location, including, but not limited to, a polling location, drop box, or election office, at the time of Your response that governs whether and under what circumstances Your personnel may be present at, enter, or conduct operations in the vicinity of a Voting Location during the 2026 General Election, including any Document that rescinds, suspends, supersedes, or replaces (a) the guidance on polling-place activity in the December 2017 edition of DOJ's *Federal Prosecution of Election Offenses* manual, or (b) the DHS protected-areas policy rescinded on or about January 20, 2025.

**REQUEST NO. 4:**

The following Documents, together with any Document that supplements or supersedes either of them: (a) the internal DHS guidance, reported by CNN on August 31, 2026, directing Homeland Security Investigations to expand elections-related investigations in at least nine states between early September and mid-October 2026, *see* Compl. ¶ 117; and (b) the 2026 DHS memorandum or directive instructing Homeland Security Investigations to coordinate with U.S. Citizenship and Immigration Services in identifying, investigating, or referring for prosecution individuals believed to have registered or voted while not U.S. citizens, including all Documents that comprise or otherwise communicate this memorandum or directive, *see* Compl. ¶¶ 114–15, 118, 121.

# ATTACHMENT 1

# Exhibit 1

## Request to Federal Bureau of Investigation
## October 17, 2025

October 17, 2025

Federal Bureau of Investigation
Attn: Initial Processing Operations Unit
Record/Information Dissemination Section
200 Constitution Drive
Winchester, VA 22602

**VIA EFOIPA AND CERTIFIED MAIL**

Dear Sir or Madame:

The Democratic National Committee (DNC) submits this request for records pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and Department of Justice (DOJ) procedures for disclosure of records under FOIA, 28 C.F.R. § 16.1-.11.

The DNC requests the following records from January 20, 2025, to the date this request is processed.

> All records relating to the deployment, posting, or positioning of Justice Department personnel with criminal law enforcement—including but not limited to prosecutors, legal support staff, and Federal Bureau of Investigations personnel within, at, or in proximity to polling places, ballot drop boxes, or election offices, including but not limited to during early voting periods, on the date of an election, or between the date of an election and certification of the results of such election.

This request includes—but is not limited to—records containing or relating to:

1. Communications within, among, or between the U.S. Department of Justice, any DOJ component, and/or the Executive Office of the President;

2. Purely factual material;

3. Formal or informal directives or orders from the Executive Office of the President, the Office of the Attorney General, the Office of the Deputy Attorney General, the Office of the Associate Attorney General, the Office of the Executive Secretariat, component leadership, or any other political appointee;

4. Policy documents, and

5. Final agency decisions or actions.

The above request excludes agency records consisting solely of news articles or press clippings, so long as the records include no accompanying discussion by agency officials.

If it is your position any portion of the requested records is exempt from disclosure, the DNC requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. *See* 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments—but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible—please state what portion of the document is non-exempt and how the material is dispersed throughout the document. *See Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

<u>Fee Waiver Request</u>

In accordance with 5 U.S.C. § 552(a)(4)(A) and agency regulations, the DNC requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, the preservations of individual voting rights, and potential violations of 18 U.S.C. § 592, and the disclosures likely will contribute to a better understanding of relevant government procedures by the DNC and the general public in a significant way. *See* 5 U.S.C. § 552(a)(4)(A)(iii). Moreover, the request primarily and fundamentally is for non-commercial purposes. *See, e.g.*, *Judicial Watch v. Rossotti*, 326 F.3d 1309, 1312-13 (D.C. Cir. 2003); *McClellan Ecological v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987); *see also* 28 C.F.R. § 16.10(b)(1), (k).

Justice Department policy has long prohibited criminal prosecutors, FBI agents, and other personnel with criminal law enforcement responsibilities from participating in the Civil Rights Division's election monitoring program. However, conspiracy theories concerning illegal voting—along with recent dismissals of ongoing Voting Rights Act enforcement actions and increased focus on purported noncitizen voting—has generated fear of a criminal law enforcement presence at the polls on Election Day. *See, e.g.*, Mike Levine, *Ahead of Election Day, FBI Finds Itself in "Awkward Challenging Spot," Officials Say*, ABCNews, Oct. 31, 2024. Whether or not DOJ will deploy criminal law enforcement personnel at polling places is a matter of national interest. The requested records will shed light on whether DOJ policy towards Election Day monitoring has changed alongside its shift away from Voting Rights Act enforcement.

The DNC is the oldest continuing party committee in the United States and is the Democratic Party's national committee. *See* 52 U.S.C. § 30101(14). As a 527 political organization, the DNC is a non-profit entity. *See* 26 U.S.C. § 527(e)(1). The DNC is organized to nominate and assist in the election of Democratic candidates, including through the education of its voters. The DNC utilizes research, communications, and voter mobilization functions to advance its mission. The DNC intends to analyze the information responsive to this request and to share its analysis with the public through press releases and other means. The release of information obtained through this request is not in the DNC's financial interest.

Under these circumstances, the DNC satisfies fully the criteria for a fee waiver.

Conclusion

If you have any questions about this request or foresee any problems in fully releasing the requested records, please contact me at (202) 923-6429 or freemand@dnc.org. Also, if the DNC's request for a fee waiver is not granted in full, please contact me immediately upon making such a determination.

Where possible, please produce records in electronic format. Please send the requested records to me at either freemand@dnc.org or Daniel Freeman, Democratic National Committee, 430 South Capitol Street SE #3, Washington, DC 20003. Thank you for your assistance.

Sincerely,

Daniel J. Freeman

Daniel J. Freeman
Litigation Director
Democratic National Committee
430 South Capitol Street SE #3
Washington, DC 20003
(202) 923-6429
freemand@dnc.org

# Exhibit 2

**Request to Civil Rights Division of the Department of Justice**

**October 17, 2025**

October 17, 2025

Kilian Kagle
Chief, FOIA/PA Branch
Civil Rights Division
U.S. Department of Justice
4CON Room 6.153
950 Pennsylvania Ave. NW
Washington, DC 20530
CRT.FOIArequests@usdoj.gov

**VIA EMAIL AND CERTIFIED MAIL**

Dear Mr. Kagle:

The Democratic National Committee (DNC) submits this request for records pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and Department of Justice (DOJ) procedures for disclosure of records under FOIA, 28 C.F.R. § 16.1-.11.

The DNC requests the following records from January 20, 2025, to the date this request is processed.

> All records relating to the deployment, posting, or positioning of Justice Department personnel with criminal law enforcement—including but not limited to prosecutors, legal support staff, and Federal Bureau of Investigations personnel within, at, or in proximity to polling places, ballot drop boxes, or election offices, including but not limited to during early voting periods, on the date of an election, or between the date of an election and certification of the results of such election.

This request includes—but is not limited to—records containing or relating to:

1. Communications within, among, or between the U.S. Department of Justice, any DOJ component, and/or the Executive Office of the President;

2. Purely factual material;

3. Formal or informal directives or orders from the Executive Office of the President, the Office of the Attorney General, the Office of the Deputy Attorney General, the Office of the Associate Attorney General, the Office of the Executive Secretariat, component leadership, or any other political appointee;

4. Policy documents, and

5. Final agency decisions or actions.

The above request excludes agency records consisting solely of news articles or press clippings, so long as the records include no accompanying discussion by agency officials.

If it is your position any portion of the requested records is exempt from disclosure, the DNC requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. *See* 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments—but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible—please state what portion of the document is non-exempt and how the material is dispersed throughout the document. *See Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

<u>Fee Waiver Request</u>

In accordance with 5 U.S.C. § 552(a)(4)(A) and agency regulations, the DNC requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, the preservations of individual voting rights, and potential violations of 18 U.S.C. § 592, and the disclosures likely will contribute to a better understanding of relevant government procedures by the DNC and the general public in a significant way. *See* 5 U.S.C. § 552(a)(4)(A)(iii). Moreover, the request primarily and fundamentally is for non-commercial purposes. *See, e.g.*, *Judicial Watch v. Rossotti*, 326 F.3d 1309, 1312-13 (D.C. Cir. 2003); *McClellan Ecological v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987); *see also* 28 C.F.R. § 16.10(b)(1), (k).

Justice Department policy has long prohibited criminal prosecutors, FBI agents, and other personnel with criminal law enforcement responsibilities from participating in the Civil Rights Division's election monitoring program. However, conspiracy theories concerning illegal voting—along with recent dismissals of ongoing Voting Rights Act enforcement actions and increased focus on purported noncitizen voting—has generated fear of a criminal law enforcement presence at the polls on Election Day. *See, e.g.*, Mike Levine, *Ahead of Election Day, FBI Finds Itself in "Awkward Challenging Spot," Officials Say*, ABCNews, Oct. 31, 2024. Whether or not DOJ will deploy criminal law enforcement personnel at polling places is a matter of national interest. The requested records will shed light on whether DOJ policy towards Election Day monitoring has changed alongside its shift away from Voting Rights Act enforcement.

The DNC is the oldest continuing party committee in the United States and is the Democratic Party's national committee. *See* 52 U.S.C. § 30101(14). As a 527 political organization, the DNC is a non-profit entity. *See* 26 U.S.C. § 527(e)(1). The DNC is organized to nominate and assist in the election of Democratic candidates, including through the education of its voters. The DNC utilizes research, communications, and voter mobilization functions to advance its mission. The DNC intends to analyze the information responsive to this request and to share its analysis with the public through press releases and other means. The release of information obtained through this request is not in the DNC's financial interest.

Under these circumstances, the DNC satisfies fully the criteria for a fee waiver.

Conclusion

If you have any questions about this request or foresee any problems in fully releasing the requested records, please contact me at (202) 923-6429 or freemand@dnc.org. Also, if the DNC's request for a fee waiver is not granted in full, please contact me immediately upon making such a determination.

Where possible, please produce records in electronic format. Please send the requested records to me at either freemand@dnc.org or Daniel Freeman, Democratic National Committee, 430 South Capitol Street SE #3, Washington, DC 20003. Thank you for your assistance.

Sincerely,

Daniel J. Freeman

Daniel J. Freeman
Litigation Director
Democratic National Committee
430 South Capitol Street SE #3
Washington, DC 20003
(202) 923-6429
freemand@dnc.org

# Exhibit 3

**Request to Criminal Division of the Department of Justice**
**October 17, 2025**

October 17, 2025

Christina Butler
Chief, FOIA/PA Branch
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
crm.foia@usdoj.gov

**VIA EMAIL AND CERTIFIED MAIL**

Dear Ms. Butler:

The Democratic National Committee (DNC) submits this request for records pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and Department of Justice (DOJ) procedures for disclosure of records under FOIA, 28 C.F.R. § 16.1-.11.

The DNC requests the following records from January 20, 2025, to the date this request is processed.

> All records relating to the deployment, posting, or positioning of Justice Department personnel with criminal law enforcement—including but not limited to prosecutors, legal support staff, and Federal Bureau of Investigations personnel within, at, or in proximity to polling places, ballot drop boxes, or election offices, including but not limited to during early voting periods, on the date of an election, or between the date of an election and certification of the results of such election.

This request includes—but is not limited to—records containing or relating to:

1. Communications within, among, or between the U.S. Department of Justice, any DOJ component, and/or the Executive Office of the President;

2. Purely factual material;

3. Formal or informal directives or orders from the Executive Office of the President, the Office of the Attorney General, the Office of the Deputy Attorney General, the Office of the Associate Attorney General, the Office of the Executive Secretariat, component leadership, or any other political appointee;

4. Policy documents, and

5. Final agency decisions or actions.

The above request excludes agency records consisting solely of news articles or press clippings, so long as the records include no accompanying discussion by agency officials.

If it is your position any portion of the requested records is exempt from disclosure, the DNC requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. *See* 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments—but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible—please state what portion of the document is non-exempt and how the material is dispersed throughout the document. *See Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

<u>Fee Waiver Request</u>

In accordance with 5 U.S.C. § 552(a)(4)(A) and agency regulations, the DNC requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, the preservations of individual voting rights, and potential violations of 18 U.S.C. § 592, and the disclosures likely will contribute to a better understanding of relevant government procedures by the DNC and the general public in a significant way. *See* 5 U.S.C. § 552(a)(4)(A)(iii). Moreover, the request primarily and fundamentally is for non-commercial purposes. *See, e.g.*, *Judicial Watch v. Rossotti*, 326 F.3d 1309, 1312-13 (D.C. Cir. 2003); *McClellan Ecological v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987); *see also* 28 C.F.R. § 16.10(b)(1), (k).

Justice Department policy has long prohibited criminal prosecutors, FBI agents, and other personnel with criminal law enforcement responsibilities from participating in the Civil Rights Division's election monitoring program. However, conspiracy theories concerning illegal voting—along with recent dismissals of ongoing Voting Rights Act enforcement actions and increased focus on purported noncitizen voting—has generated fear of a criminal law enforcement presence at the polls on Election Day. *See, e.g.*, Mike Levine, *Ahead of Election Day, FBI Finds Itself in "Awkward Challenging Spot," Officials Say*, ABCNews, Oct. 31, 2024. Whether or not DOJ will deploy criminal law enforcement personnel at polling places is a matter of national interest. The requested records will shed light on whether DOJ policy towards Election Day monitoring has changed alongside its shift away from Voting Rights Act enforcement.

The DNC is the oldest continuing party committee in the United States and is the Democratic Party's national committee. *See* 52 U.S.C. § 30101(14). As a 527 political organization, the DNC is a non-profit entity. *See* 26 U.S.C. § 527(e)(1). The DNC is organized to nominate and assist in the election of Democratic candidates, including through the education of its voters. The DNC utilizes research, communications, and voter mobilization functions to advance its mission. The DNC intends to analyze the information responsive to this request and to share its analysis with the public through press releases and other means. The release of information obtained through this request is not in the DNC's financial interest.

Under these circumstances, the DNC satisfies fully the criteria for a fee waiver.

Conclusion

If you have any questions about this request or foresee any problems in fully releasing the requested records, please contact me at (202) 923-6429 or freemand@dnc.org. Also, if the DNC's request for a fee waiver is not granted in full, please contact me immediately upon making such a determination.

Where possible, please produce records in electronic format. Please send the requested records to me at either freemand@dnc.org or Daniel Freeman, Democratic National Committee, 430 South Capitol Street SE #3, Washington, DC 20003. Thank you for your assistance.

Sincerely,

Daniel J. Freeman

Daniel J. Freeman
Litigation Director
Democratic National Committee
430 South Capitol Street SE #3
Washington, DC 20003
(202) 923-6429
freemand@dnc.org

# Exhibit 4

## Request to Department of Justice
## October 17, 2025

October 17, 2025

Andrew Fiorillo
Acting Chief, Initial Request Staff
Office of Information Policy
Department of Justice
6th Floor
441 G St NW
Washington, DC 20530

**VIA FOIA STAR**

Dear Mr. Fiorillo:

The Democratic National Committee (DNC) submits this request for records pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and Department of Justice (DOJ) procedures for disclosure of records under FOIA, 28 C.F.R. § 16.1-.11.

The DNC requests the following records from January 20, 2025, to the date this request is processed.

> All records relating to the deployment, posting, or positioning of Justice Department personnel with criminal law enforcement—including but not limited to prosecutors, legal support staff, and Federal Bureau of Investigations personnel within, at, or in proximity to polling places, ballot drop boxes, or election offices, including but not limited to during early voting periods, on the date of an election, or between the date of an election and certification of the results of such election.

This request includes—but is not limited to—records containing or relating to:

1. Communications within, among, or between the U.S. Department of Justice, any DOJ component, and/or the Executive Office of the President;

2. Purely factual material;

3. Formal or informal directives or orders from the Executive Office of the President, the Office of the Attorney General, the Office of the Deputy Attorney General, the Office of the Associate Attorney General, the Office of the Executive Secretariat, component leadership, or any other political appointee;

4. Policy documents, and

5. Final agency decisions or actions.

The above request excludes agency records consisting solely of news articles or press clippings, so long as the records include no accompanying discussion by agency officials.

If it is your position any portion of the requested records is exempt from disclosure, the DNC requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. *See* 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments—but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible—please state what portion of the document is non-exempt and how the material is dispersed throughout the document. *See Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

<u>Fee Waiver Request</u>

In accordance with 5 U.S.C. § 552(a)(4)(A) and agency regulations, the DNC requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, the preservations of individual voting rights, and potential violations of 18 U.S.C. § 592, and the disclosures likely will contribute to a better understanding of relevant government procedures by the DNC and the general public in a significant way. *See* 5 U.S.C. § 552(a)(4)(A)(iii). Moreover, the request primarily and fundamentally is for non-commercial purposes. *See, e.g.*, *Judicial Watch v. Rossotti*, 326 F.3d 1309, 1312-13 (D.C. Cir. 2003); *McClellan Ecological v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987); *see also* 28 C.F.R. § 16.10(b)(1), (k).

Justice Department policy has long prohibited criminal prosecutors, FBI agents, and other personnel with criminal law enforcement responsibilities from participating in the Civil Rights Division's election monitoring program. However, conspiracy theories concerning illegal voting—along with recent dismissals of ongoing Voting Rights Act enforcement actions and increased focus on purported noncitizen voting—has generated fear of a criminal law enforcement presence at the polls on Election Day. *See, e.g.*, Mike Levine, *Ahead of Election Day, FBI Finds Itself in "Awkward Challenging Spot," Officials Say*, ABCNews, Oct. 31, 2024. Whether or not DOJ will deploy criminal law enforcement personnel at polling places is a matter of national interest. The requested records will shed light on whether DOJ policy towards Election Day monitoring has changed alongside its shift away from Voting Rights Act enforcement.

The DNC is the oldest continuing party committee in the United States and is the Democratic Party's national committee. *See* 52 U.S.C. § 30101(14). As a 527 political organization, the DNC is a non-profit entity. *See* 26 U.S.C. § 527(e)(1). The DNC is organized to nominate and assist in the election of Democratic candidates, including through the education of its voters. The DNC utilizes research, communications, and voter mobilization functions to advance its mission. The DNC intends to analyze the information responsive to this request and to share its analysis with the public through press releases and other means. The release of information obtained through this request is not in the DNC's financial interest.

Under these circumstances, the DNC satisfies fully the criteria for a fee waiver.

Conclusion

If you have any questions about this request or foresee any problems in fully releasing the requested records, please contact me at (202) 923-6429 or freemand@dnc.org. Also, if the DNC's request for a fee waiver is not granted in full, please contact me immediately upon making such a determination.

Where possible, please produce records in electronic format. Please send the requested records to me at either freemand@dnc.org or Daniel Freeman, Democratic National Committee, 430 South Capitol Street SE #3, Washington, DC 20003. Thank you for your assistance.

Sincerely,

Daniel J. Freeman

Daniel J. Freeman
Litigation Director
Democratic National Committee
430 South Capitol Street SE #3
Washington, DC 20003
(202) 923-6429
freemand@dnc.org

# Exhibit 5

**Request to U.S. Customs and Border Protection**
**October 17, 2025**

October 17, 2025

Sabrina Burroughs
FOIA Officer
United States Customs and Border Protection
Freedom of Information Act Office
1330 Pennsylvania Avenue NW, Mail Stop 1181
Washington, DC 20229-1181
cbpfoiapublicliaison@cbp.dhs.gov

**VIA EMAIL AND SECURERELEASE**

Dear Mr. Pineiro:

The Democratic National Committee (DNC) submits this request for records pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and Department of Homeland Security (DHS) procedures for disclosure of records under FOIA, 6 C.F.R. §§ 5.1-.13.

The DNC requests the following records from January 20, 2025, to the date this request is processed.

> All records relating to the deployment, posting, or positioning of United States Customs and Border Protection (CBP) personnel within, at, or in proximity to polling places, ballot drop boxes, or election offices, including but not limited to during early voting periods, on the date of an election, or between the date of an election and certification of the results of such election.

This request includes—but is not limited to—records containing or relating to:

1. Communications within, among, or between the DHS Office of the Executive Secretary, CBP, and/or the Executive Office of the President;

2. Purely factual material;

3. Formal or informal directives or orders from the Executive Office of the President, the Office of the Executive Secretary, CBP leadership, or any other political appointee;

4. Policy documents, including documents authorizing or prohibiting agency actions, and

5. Final agency decisions or actions.

The above request excludes agency records consisting solely of news articles or press clippings, so long as the records include no accompanying discussion by agency officials.

If it is your position any portion of the requested records is exempt from disclosure, the DNC requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. *See* 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments—but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible—please state what portion of the document is non-exempt and how the material is dispersed throughout the document. *See Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

Fee Waiver Request

In accordance with 5 U.S.C. § 552(a)(4)(A) and agency regulations, the DNC requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, the preservations of individual voting rights, and potential violations of 18 U.S.C. § 592, and the disclosures likely will contribute to a better understanding of relevant government procedures by the DNC and the general public in a significant way. *See* 5 U.S.C. § 552(a)(4)(A)(iii). Moreover, the request primarily and fundamentally is for non-commercial purposes. *See, e.g.*, *Judicial Watch v. Rossotti*, 326 F.3d 1309, 1312-13 (D.C. Cir. 2003); *McClellan Ecological v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987); *see also* 6 C.F.R. § 5.11(b)(1), (k).

For years, rumors have circulated that DHS personnel may appear at the polls on Election Day. *See, e.g.*, Isiah Holmes, *Rumors of ICE Agents at Polling Places Appear Unfounded*, Wisconsin Examiner, Apr. 1, 2025. Previously, DHS has responded by clarifying that its personnel "do[] not patrol or conduct enforcement operations at polling locations." Ciara O'Rourke, *ICE Says It's Not Patrolling Polling Locations on Election Day*, PolitiFact, Feb. 26, 2020; *see also* Kwasi Gyamfi Asiedu, *ICE Told Staff Not to Wear uniform When Voting Due to Long-Standing Policy, Unrelated to Noncitizens*, Politifact, Nov. 6, 2024. In recent months, however, DHS has dramatically escalated enforcement activity, including through intensive operations in major American cities. In addition, Secretary Noem has indicated that in 2026, DHS personnel will be deployed at major public events, such as the Super Bowl. Whether or not DHS continues to prohibit enforcement operations at polling places is a matter of national interest. The requested records will shed light on whether DHS policy towards Election Day enforcement has changed alongside other increases in enforcement activity.

The DNC is the oldest continuing party committee in the United States and is the Democratic Party's national committee. *See* 52 U.S.C. § 30101(14). As a 527 political organization, the DNC is a non-profit entity. *See* 26 U.S.C. § 527(e)(1). The DNC is organized to nominate and assist in the election of Democratic candidates, including through the education of its voters. The DNC utilizes research, communications, and voter mobilization functions to advance its mission. The DNC intends to analyze the information responsive to this request and to share its analysis with the public through press releases and other means. The release of information obtained through this request is not in the DNC's financial interest.

Under these circumstances, the DNC satisfies fully the criteria for a fee waiver.

Conclusion

If you have any questions about this request or foresee any problems in fully releasing the requested records, please contact me at (202) 923-6429 or freemand@dnc.org. Also, if the DNC's request for a fee waiver is not granted in full, please contact me immediately upon making such a determination.

Where possible, please produce records in electronic format. Please send the requested records to me at either freemand@dnc.org or Daniel Freeman, Democratic National Committee, 430 South Capitol Street SE #3, Washington, DC 20003. Thank you for your assistance.

Sincerely,

Daniel J. Freeman

Daniel J. Freeman
Litigation Director
Democratic National Committee
430 South Capitol Street SE #3
Washington, DC 20003
(202) 923-6429
freemand@dnc.org

# Exhibit 6

## Request to Federal Protective Service
## October 17, 2025

October 21, 2025

Gregory Bridges
FOIA Liaison
Federal Protective Service
Privacy Office, Mail Stop 0655
2707 Martin Luther King Jr. Ave. SE
Washington, DC 20528
FPSFOIA@fps.dhs.gov

**VIA EMAIL AND SECURERELEASE**

Dear Mr. Bridges:

The Democratic National Committee (DNC) submits this request for records pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and Department of Homeland Security procedures for disclosure of records under FOIA, 6 C.F.R. §§ 5.1-.13.

The DNC requests the following records from January 20, 2025, to the date this request is processed.

> All records relating to the deployment, posting, or positioning of DHS personnel within, at, or in proximity to polling places, ballot drop boxes, or election offices, including but not limited to during early voting periods, on the date of an election, or between the date of an election and certification of the results of such election.

This request includes—but is not limited to—records containing or relating to:

1. Communications within, among, or between the U.S. Department of Homeland Security (DHS), any DHS component, and/or the Executive Office of the President;

2. Purely factual material;

3. Formal or informal directives or orders from the Executive Office of the President, the Office of the Executive Secretary, component leadership, or any other political appointee;

4. Policy documents, including documents authorizing or prohibiting agency actions, and

5. Final agency decisions or actions.

The above request excludes agency records consisting solely of news articles or press clippings, so long as the records include no accompanying discussion by agency officials.

If it is your position any portion of the requested records is exempt from disclosure, the DNC requests that you provide it with an index of those documents as required under *Vaughn v.*

*Rosen*, 484 F.2d 820 (D.C. Cir. 1973). In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. *See* 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments—but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible—please state what portion of the document is non-exempt and how the material is dispersed throughout the document. *See Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

<u>Fee Waiver Request</u>

In accordance with 5 U.S.C. § 552(a)(4)(A) and agency regulations, the DNC requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, the preservations of individual voting rights, and potential violations of 18 U.S.C. § 592, and the disclosures likely will contribute to a better understanding of relevant government procedures by the DNC and the general public in a significant way. *See* 5 U.S.C. § 552(a)(4)(A)(iii). Moreover, the request primarily and fundamentally is for non-commercial purposes. *See, e.g.*, *Judicial Watch v. Rossotti*, 326 F.3d 1309, 1312-13 (D.C. Cir. 2003); *McClellan Ecological v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987); *see also* 6 C.F.R. § 5.11(b)(1), (k).

For years, rumors have circulated that DHS personnel may appear at the polls on Election Day. *See, e.g.*, Isiah Holmes, *Rumors of ICE Agents at Polling Places Appear Unfounded*, Wisconsin Examiner, Apr. 1, 2025. Previously, DHS has responded by clarifying that its personnel "do[] not patrol or conduct enforcement operations at polling locations." Ciara O'Rourke, *ICE Says It's Not Patrolling Polling Locations on Election Day*, PolitiFact, Feb. 26, 2020; *see also* Kwasi Gyamfi Asiedu, *ICE Told Staff Not to Wear uniform When Voting Due to Long-Standing Policy, Unrelated to Noncitizens*, Politifact, Nov. 6, 2024. In recent months, however, DHS has dramatically escalated enforcement activity, including through intensive operations in major American cities. In addition, Secretary Noem has indicated that in 2026, DHS personnel will be deployed at major public events, such as the Super Bowl. Whether or not DHS continues to prohibit enforcement operations at polling places is a matter of national interest. The requested records will shed light on whether DHS policy towards Election Day enforcement has changed alongside other increases in enforcement activity.

The DNC is the oldest continuing party committee in the United States and is the Democratic Party's national committee. *See* 52 U.S.C. § 30101(14). As a 527 political organization, the DNC is a non-profit entity. *See* 26 U.S.C. § 527(e)(1). The DNC is organized to nominate and assist in the election of Democratic candidates, including through the education of its voters. The DNC utilizes research, communications, and voter mobilization functions to advance its mission. The DNC intends to analyze the information responsive to this request and to share its analysis with the public through press releases and other means. The release of information obtained through this request is not in the DNC's financial interest.

Under these circumstances, the DNC satisfies fully the criteria for a fee waiver.

<u>Conclusion</u>

If you have any questions about this request or foresee any problems in fully releasing the requested records, please contact me at (202) 923-6429 or freemand@dnc.org. Also, if the DNC's request for a fee waiver is not granted in full, please contact me immediately upon making such a determination.

Where possible, please produce records in electronic format. Please send the requested records to me at either freemand@dnc.org or Daniel Freeman, Democratic National Committee, 430 South Capitol Street SE #3, Washington, DC 20003. Thank you for your assistance.

Sincerely,

Daniel J. Freeman

Daniel J. Freeman
Litigation Director
Democratic National Committee
430 South Capitol Street SE #3
Washington, DC 20003
(202) 923-6429
freemand@dnc.org

# Exhibit 7

**Request to U.S. Immigration and Customs Enforcement**
**October 17, 2025**

October 17, 2025

Fernando Pineiro
FOIA Officer
United States Immigration and Customs Enforcement
FOIA Office
500 12th Street SW, Stop 5009
Washington, DC 20536-5009
ice-foia@ice.dhs.gov

**VIA EMAIL AND SECURERELEASE**

Dear Mr. Pineiro:

The Democratic National Committee (DNC) submits this request for records pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and Department of Homeland Security (DHS) procedures for disclosure of records under FOIA, 6 C.F.R. §§ 5.1-.13.

The DNC requests the following records from January 20, 2025, to the date this request is processed.

> All records relating to the deployment, posting, or positioning of United States Immigration and Customs Enforcement (ICE) personnel within, at, or in proximity to polling places, ballot drop boxes, or election offices, including but not limited to during early voting periods, on the date of an election, or between the date of an election and certification of the results of such election.

This request includes—but is not limited to—records containing or relating to:

1. Communications within, among, or between the DHS Office of the Executive Secretary, ICE, and/or the Executive Office of the President;

2. Purely factual material;

3. Formal or informal directives or orders from the Executive Office of the President, the Office of the Executive Secretary, ICE leadership, or any other political appointee;

4. Policy documents, including documents authorizing or prohibiting agency actions, and

5. Final agency decisions or actions.

The above request excludes agency records consisting solely of news articles or press clippings, so long as the records include no accompanying discussion by agency officials.

If it is your position any portion of the requested records is exempt from disclosure, the DNC requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. *See* 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments—but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible—please state what portion of the document is non-exempt and how the material is dispersed throughout the document. *See Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

<u>Fee Waiver Request</u>

In accordance with 5 U.S.C. § 552(a)(4)(A) and agency regulations, the DNC requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, the preservations of individual voting rights, and potential violations of 18 U.S.C. § 592, and the disclosures likely will contribute to a better understanding of relevant government procedures by the DNC and the general public in a significant way. *See* 5 U.S.C. § 552(a)(4)(A)(iii). Moreover, the request primarily and fundamentally is for non-commercial purposes. *See, e.g.*, *Judicial Watch v. Rossotti*, 326 F.3d 1309, 1312-13 (D.C. Cir. 2003); *McClellan Ecological v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987); *see also* 6 C.F.R. § 5.11(b)(1), (k).

For years, rumors have circulated that ICE personnel may appear at the polls on Election Day. *See, e.g.*, Isiah Holmes, *Rumors of ICE Agents at Polling Places Appear Unfounded*, Wisconsin Examiner, Apr. 1, 2025. Previously, ICE has responded by clarifying that its personnel "do[] not patrol or conduct enforcement operations at polling locations." Ciara O'Rourke, *ICE Says It's Not Patrolling Polling Locations on Election Day*, PolitiFact, Feb. 26, 2020; *see also* Kwasi Gyamfi Asiedu, *ICE Told Staff Not to Wear uniform When Voting Due to Long-Standing Policy, Unrelated to Noncitizens*, Politifact, Nov. 6, 2024. In recent months, however, ICE has dramatically escalated enforcement activity, including through intensive operations in major American cities. In addition, Secretary Noem has indicated that in 2026, ICE personnel will be deployed at major public events, such as the Super Bowl. Whether or not ICE continues to prohibit enforcement operations at polling places is a matter of national interest. The requested records will shed light on whether ICE policy towards Election Day enforcement has changed alongside other increases in enforcement activity.

The DNC is the oldest continuing party committee in the United States and is the Democratic Party's national committee. *See* 52 U.S.C. § 30101(14). As a 527 political organization, the DNC is a non-profit entity. *See* 26 U.S.C. § 527(e)(1). The DNC is organized to nominate and assist in the election of Democratic candidates, including through the education of its voters. The DNC utilizes research, communications, and voter mobilization functions to advance its mission. The DNC intends to analyze the information responsive to this request and to share its analysis with the public through press releases and other means. The release of information obtained through this request is not in the DNC's financial interest.

Under these circumstances, the DNC satisfies fully the criteria for a fee waiver.

Conclusion

If you have any questions about this request or foresee any problems in fully releasing the requested records, please contact me at (202) 923-6429 or freemand@dnc.org. Also, if the DNC's request for a fee waiver is not granted in full, please contact me immediately upon making such a determination.

Where possible, please produce records in electronic format. Please send the requested records to me at either freemand@dnc.org or Daniel Freeman, Democratic National Committee, 430 South Capitol Street SE #3, Washington, DC 20003. Thank you for your assistance.

Sincerely,

Daniel J. Freeman

Daniel J. Freeman
Litigation Director
Democratic National Committee
430 South Capitol Street SE #3
Washington, DC 20003
(202) 923-6429
freemand@dnc.org

# Exhibit 8

**Request to Department of Homeland Security**
**October 17, 2025**

October 17, 2025

Roman Jankowski
Chief FOIA Officer
Department of Homeland Security
Privacy Office, Mail Stop 0655
2707 Martin Luther King Jr. Ave. SE
Washington, DC 20528
foia@hq.dhs.gov

**VIA EMAIL AND SECURERELEASE**

Dear Mr. Jankowski:

The Democratic National Committee (DNC) submits this request for records pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and Department of Homeland Security procedures for disclosure of records under FOIA, 6 C.F.R. §§ 5.1-.13.

The DNC requests the following records from January 20, 2025, to the date this request is processed.

> All records relating to the deployment, posting, or positioning of DHS personnel within, at, or in proximity to polling places, ballot drop boxes, or election offices, including but not limited to during early voting periods, on the date of an election, or between the date of an election and certification of the results of such election.

This request includes—but is not limited to—records containing or relating to:

1. Communications within, among, or between the U.S. Department of Homeland Security (DHS), any DHS component, and/or the Executive Office of the President;

2. Purely factual material;

3. Formal or informal directives or orders from the Executive Office of the President, the Office of the Executive Secretary, component leadership, or any other political appointee;

4. Policy documents, including documents authorizing or prohibiting agency actions, and

5. Final agency decisions or actions.

The above request excludes agency records consisting solely of news articles or press clippings, so long as the records include no accompanying discussion by agency officials.

If it is your position any portion of the requested records is exempt from disclosure, the DNC requests that you provide it with an index of those documents as required under *Vaughn v.*

*Rosen*, 484 F.2d 820 (D.C. Cir. 1973). In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. *See* 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments—but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible—please state what portion of the document is non-exempt and how the material is dispersed throughout the document. *See Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

<u>Fee Waiver Request</u>

In accordance with 5 U.S.C. § 552(a)(4)(A) and agency regulations, the DNC requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, the preservations of individual voting rights, and potential violations of 18 U.S.C. § 592, and the disclosures likely will contribute to a better understanding of relevant government procedures by the DNC and the general public in a significant way. *See* 5 U.S.C. § 552(a)(4)(A)(iii). Moreover, the request primarily and fundamentally is for non-commercial purposes. *See, e.g.*, *Judicial Watch v. Rossotti*, 326 F.3d 1309, 1312-13 (D.C. Cir. 2003); *McClellan Ecological v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987); *see also* 6 C.F.R. § 5.11(b)(1), (k).

For years, rumors have circulated that DHS personnel may appear at the polls on Election Day. *See, e.g.*, Isiah Holmes, *Rumors of ICE Agents at Polling Places Appear Unfounded*, Wisconsin Examiner, Apr. 1, 2025. Previously, DHS has responded by clarifying that its personnel "do[] not patrol or conduct enforcement operations at polling locations." Ciara O'Rourke, *ICE Says It's Not Patrolling Polling Locations on Election Day*, PolitiFact, Feb. 26, 2020; *see also* Kwasi Gyamfi Asiedu, *ICE Told Staff Not to Wear uniform When Voting Due to Long-Standing Policy, Unrelated to Noncitizens*, Politifact, Nov. 6, 2024. In recent months, however, DHS has dramatically escalated enforcement activity, including through intensive operations in major American cities. In addition, Secretary Noem has indicated that in 2026, DHS personnel will be deployed at major public events, such as the Super Bowl. Whether or not DHS continues to prohibit enforcement operations at polling places is a matter of national interest. The requested records will shed light on whether DHS policy towards Election Day enforcement has changed alongside other increases in enforcement activity.

The DNC is the oldest continuing party committee in the United States and is the Democratic Party's national committee. *See* 52 U.S.C. § 30101(14). As a 527 political organization, the DNC is a non-profit entity. *See* 26 U.S.C. § 527(e)(1). The DNC is organized to nominate and assist in the election of Democratic candidates, including through the education of its voters. The DNC utilizes research, communications, and voter mobilization functions to advance its mission. The DNC intends to analyze the information responsive to this request and to share its analysis with the public through press releases and other means. The release of information obtained through this request is not in the DNC's financial interest.

Under these circumstances, the DNC satisfies fully the criteria for a fee waiver.

Conclusion

If you have any questions about this request or foresee any problems in fully releasing the requested records, please contact me at (202) 923-6429 or freemand@dnc.org. Also, if the DNC's request for a fee waiver is not granted in full, please contact me immediately upon making such a determination.

Where possible, please produce records in electronic format. Please send the requested records to me at either freemand@dnc.org or Daniel Freeman, Democratic National Committee, 430 South Capitol Street SE #3, Washington, DC 20003. Thank you for your assistance.

Sincerely,

Daniel J. Freeman

Daniel J. Freeman
Litigation Director
Democratic National Committee
430 South Capitol Street SE #3
Washington, DC 20003
(202) 923-6429
freemand@dnc.org

# ATTACHMENT 2

# Exhibit A

CREW
CITIZENS FOR
RESPONSIBILITY &
ETHICS IN WASHINGTON

September 4, 2025

Brian Flannigan
Chief, Civil Division, FOIA and Privacy Office
U.S. Department of Justice
Room 8400
1100 L Street, NW
Washington, DC 20530
civil.routing.foia@usdoj.gov

Christina Butler
Chief, Criminal Division, FOIA/PA Unit
U.S. Department of Justice
950 Constitution Ave NW
Washington, DC 20530
crm.foia@usdoj.gov

**Re: Freedom of Information Act and Expedited Processing Requests**

Dear FOIA Officer:

Citizens for Responsibility and Ethics in Washington ("CREW") submits this request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Department of Justice ("DOJ") regulations.

Specifically, CREW requests from January 20, 2025 to the date this request is processed:

1. All formal or informal data sharing agreements between DOJ and any state or election official[1] providing access to personally identifiable information ("PII").[2]

[1] "Election official" here is used to describe any state or local official involved in state or federal election administration, including a state's chief election official and members of election boards and commissions.
[2] The term "PII" here is used as defined in OMB Memorandum M-07-16, which refers to information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information that is linked or linkable to a specific individual. Examples of PII include names, social security numbers, and drivers' license numbers. *See* Office of Management & Budget, *Safeguarding Against and Responding to the Breach of Personally Identifiable Information* (May 22, 2007), available at https://georgewbush-whitehouse.archives.gov/omb/memoranda/fy2007/m07-16.pdf.

2. Agency records[3] sufficient to show:

   a. All formal or informal policies, determinations or conclusions (including underlying memoranda) concerning DOJ's legal basis for requesting and accessing PII held by election officials.

   b. All formal or informal policies, determinations or conclusions (including underlying memoranda) concerning the scope of DOJ's use of the PII it seeks from election officials. This includes records reflecting any plans for how the agency will compile, aggregate, synthesize, match, link, or otherwise combine data obtained from an election official with any other data.

   c. Privacy or data security safeguards in place for protecting PII shared by election officials.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. *See* 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. *See Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

Please be advised that CREW intends to pursue all legal remedies to enforce its rights under FOIA. Accordingly, because litigation is reasonably foreseeable, the agency should institute an agencywide preservation hold on all documents potentially responsive to this request.

**Fee Waiver Request**

In accordance with 5 U.S.C. § 552(a)(4)(A) and agency regulations, CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures likely will contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. *See id.* § 552(a)(4)(A)(iii). Moreover, the request primarily and fundamentally is for non-commercial purposes. *See, e.g.*, *McClellan Ecological v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987).

[3] "Agency records" here is used within the meaning of 5 U.S.C. § 552 and, unless otherwise indicated, "agency records" sought in this FOIA request and each of its numbered and lettered subparts include communications sent or received by DOJ regarding the subject matter described in that subpart.

Beginning in 2025, the DOJ has demanded an unprecedented amount of confidential voter information, including full copies of computerized voter registration lists, from states across the country.[4] At least 19 states have confirmed receiving requests to date[5] seeking information ranging from voter rolls and registration applications to sensitive details such as partial Social Security and driver's license numbers.[6] The scope and aggressiveness of these demands have sparked pushback from state election officials, who are responsible for maintaining accurate voter rolls and ensuring compliance with state and federal election and privacy laws.[7] Several states—including Maine, Oregon, and Pennsylvania—have already rejected requests for unredacted voter data, citing privacy and security concerns.[8] One county in California is facing a federal lawsuit tied to these demands.[9] Records responsive to this FOIA request would shed light on important questions about the security of voter data raised by this unprecedented federal intervention into states' election infrastructure.

CREW is a nonprofit corporation, organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the public's right to be aware of the activities of government officials and to ensuring the integrity of the federal government. CREW uses a combination of research, litigation, and advocacy to advance its mission. CREW intends to analyze the information responsive to this request and to share its analysis with the public through reports, press releases, or other means. In addition, CREW will disseminate any documents it acquires from this request to the public through its website, www.citizensforethics.org. The release of information obtained through this request is not in CREW's financial interest.

CREW further requests that it not be charged search or review fees for this request pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) because CREW qualifies as a member of the news media. *See Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1386 (D.C. Cir. 1989) (holding non-profit a "representative of the news media" and broadly interpreting the term to include "any person or organization which regularly publishes or disseminates information to the public").

CREW routinely disseminates information obtained through FOIA to the public in several ways. For example, CREW's website receives over 150,000 page views every month. The website includes blogposts that report on and analyze newsworthy developments regarding government ethics, corruption, and money in politics, as well as numerous reports CREW has published to educate the public about these

---

[4] Matt Cohen, *All the States Where DOJ is Demanding Voting Data,* Democracy Docket (July 18, 2025), https://www.democracydocket.com/news-alerts/all-the-states-where-doj-is-demanding-voting-data/.
[5] Ali Swenson & Gary Fields, *The Justice Department Seeks Voter and Election Information from at Least 19 States, AP Finds*, Associated Press (Aug. 3, 2025), https://apnews.com/article/a04b1522bed0cb6bbc286e25b139701f.
[6] Peter Hancock, *Feds Demand Sensitive Illinois Voter Registration Data After State Responds,* J. Courier (Aug. 19, 2025), https://www.myjournalcourier.com/news/article/doj-illinois-voter-database-20822622.php; Tirzah Christopher, *Pa. Responds to Second Justice Department Letter Seeking Sensitive Voter Information*, PennLive (Aug. 21, 2025), https://www.pennlive.com/politics/2025/08/pa-responds-to-second-justice-department-letter-seeking-sensitive-voter-information.html; Fredreka Schouten, *Trump DOJ Seeks Voter Data, Including Social Security Numbers, from States*, CNN (Sept. 1, 2025), https://www.cnn.com/2025/09/01/politics/trump-voter-demands-social-security.
[7] Patrick Marley & Yvonne Wingett Sanchez, *DOJ hits states with broad requests for voter rolls, election data*, Wash. Post (July 16, 2025), https://www.washingtonpost.com/politics/2025/07/16/trump-voter-fraud-elections/; Yunior Rivas, *DOJ Doubles Down on Demands for Maine's Voter Data, Secretary of State Fires Back,* Democracy Docket (Aug. 20, 2025), https://www.democracydocket.com/news-alerts/doj-doubles-down-on-demands-for-maines-voter-data-secretary-of-state-fires-back.
[8] Matt Cohen, *Oregon and Pennsylvania Are Latest to Reject DOJ Demand for Voter Data*, Democracy Docket (Aug. 22, 2025), https://www.democracydocket.com/news-alerts/oregon-and-pennsylvania-are-latest-to-reject-doj-demand-for-voter-data/.
[9] Sarah Libby, *Was a Dog Sent a Ballot? Inside the DOJ's Strange Lawsuit Seeking California Voter Data*, S.F. Chron. (July 25, 2025), https://www.sfchronicle.com/politics/article/orange-county-vote-lawsuit-20781036.php.

issues. These reports frequently rely on government records obtained through FOIA. CREW also posts the documents it obtains through FOIA on its website.

Under these circumstances, CREW satisfies fully the criteria for a fee waiver.

**Expedited Processing Request**

CREW requests expedited processing this FOIA request pursuant to FOIA, 5 U.S.C. § 552 and 28 C.F.R. 16.5(e). CREW is entitled to expedited processing because there is an "urgency to inform the public concerning actual or alleged Federal Government activity," and CREW "is primarily engaged in disseminating information," 5 U.S.C. § 552(6)(E)(v)(II). In addition, DHS should grant expedited processing because there is "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(e)(iv).

CREW is "primarily engaged in disseminating information" to the public. This "standard 'requires that information dissemination be the main [and not merely an incidental] activity of the requestor,''" but "publishing information 'need not be [the organization's] sole occupation.'" *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 298 (D.D.C. 2017). CREW routinely disseminates information obtained through FOIA to the public in several ways. For example, CREW's website receives hundreds of thousands of page views every month. The website includes blogposts that report on and analyze newsworthy developments regarding government ethics, corruption, and money in politics, as well as numerous reports CREW has published to educate the public about these issues. These reports frequently rely on government records obtained through FOIA. CREW also posts the documents it obtains through FOIA on its website. CREW is a credible requestor and disseminator of information often relied on by major media outlets.

Further, the facts demonstrate that (1) the request concerns a matter of current exigency to the American public; (2) the consequences of delaying a response would compromise a significant recognized interest; and (3) the request concerns federal government activity. *Al-Fayed v. C.I.A.*, 254 F.3d 300, 310 (D.C. Cir. 2001).

First, the requested records concern a matter of current exigency to the American public. Since early 2025, the Department has sent letters, emails, and phone requests to state election officials seeking voter registration rolls, election records, and in some cases unredacted identifiers such as Social Security and driver's license numbers. These requests are ongoing in the months before the November 2025 general elections, which include statewide contests in New Jersey, New York, Pennsylvania, and Virginia. Without timely disclosure, the public will not know how federal officials are using or storing their voter data.

Second, delaying a response would undermine voters' state and federal privacy rights. The Privacy Act of 1974 generally requires federal agencies to identify a lawful authority and purpose for requesting personal records.[10] Several states, including Oregon and Pennsylvania, have rejected DOJ's requests for unredacted voter data—such as driver's license and Social Security numbers—citing state privacy protections and the absence of clear federal authority.[11] For example, Arizona officials have so far

---

[10] *See* 5 U.S.C. § 552a(b).
[11] Cohen, supra note 8.

refused to comply, noting that state law prohibits disclosure of the requested information and that compliance could constitute a felony.[12] California officials have also declined to date, explaining that state law bars release of the requested records.[13] Without expedited disclosure, it will be impossible for the public to evaluate whether their state and federal privacy rights are being protected in the Department's unprecedented requests for large amounts of sensitive personal data before the November 2025 elections. This may affect potential voters' willingness to share their information with state authorities to participate in these upcoming elections. Once such sensitive voter information is released, the harm to Americans' privacy and voting rights cannot be remedied.

Finally, the management and compelled disclosure of voter data by the Department of Justice is a federal government activity. Expedited processing will allow voters, state officials, and policymakers to assess the scope and legality of these actions before the November 2025 elections.

Separately, DOJ's demands have been the subject of national press coverage, including reports by the Associated Press, Washington Post, and San Francisco Chronicle.[14] This coverage reflects widespread public interest and questions about the integrity of the government's role. Under 6 C.F.R. § 5.5(e)(1)(iv), this qualifies as an exceptional case warranting expedited disclosure.

The undersigned certifies that the representations in this expedited processing request are true and correct to the best of his knowledge and belief.

**Conclusion**

Where possible, please produce records in electronic format. If you have any questions about this request or foresee any problems in fully releasing the requested records, please email me at kfarchadi@citizensforethics.org and foia@citizensforethics.org or call me at (202) 408-5565. Also, if CREW's request for a fee waiver is denied, please contact our office immediately upon making such a determination.

Sincerely,

Kayvan Farchadi

Kayvan Farchadi
Senior Counsel

[12] Jeremy Duda, *Fontes Rejects DOJ Request for Arizona Voter Database*, Axios (Sept. 2, 2025), https://www.axios.com/local/phoenix/2025/09/02/fontes-rejects-doj-voter-database.
[13] Shaun Robinson, *Vermont secretary of state says she won't share voter data with Trump administration*, Vt. Digger (Aug. 13, 2025), https://vtdigger.org/2025/08/13/vermont-secretary-of-state-says-she-wont-share-voter-data-with-trump-administration/; Sara DiNatale, *California Officials Say They Can't Hand Over Requested Voter Data Without Privacy Protections*, S.F. Chron. (Sept. 2, 2025), https://www.sfchronicle.com/politics/article/san-francisco-trump-voter-data-21027394.php.
[14] Swenson, supra note 5; Marley, supra note 7; Libby, supra note 9.

# Exhibit E

CREW
CITIZENS FOR RESPONSIBILITY & ETHICS IN WASHINGTON

November 4, 2025

Kilian B. Kagle
FOIA/PA Branch
Civil Rights Division
4CON, Room 6.153
950 Pennsylvania Ave, N.W.
Washington, DC 20530
CRT.FOIArequests@usdoj.gov

**Re: Freedom of Information Act Request**

Dear FOIA Officer:

Citizens for Responsibility and Ethics in Washington ("CREW") submits this request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Department of Justice ("DOJ") regulations.

Specifically, CREW requests from January 20, 2025 to the date this request is processed:

1. All formal or informal data sharing agreements between DOJ and any state or election official[1] providing access to personally identifiable information ("PII").[2]

2. All records relating to DOJ's use of the Department of Homeland Security's Systematic Alien Verification for Entitlements ("SAVE") system for purposes of verifying the citizenship of voters or voter registrants in any state.

---

[1] "Election official" here is used to describe any state or local official involved in state or federal election administration, including a state's chief election official and members of election boards and commissions.

[2] The term "PII" here is used as defined in OMB Memorandum M-07-16, which refers to information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information that is linked or linkable to a specific individual. Examples of PII include names, social security numbers, and drivers' license numbers. *See* Office of Management & Budget, *Safeguarding Against and Responding to the Breach of Personally Identifiable Information* (May 22, 2007), available at https://georgewbush-whitehouse.archives.gov/omb/memoranda/fy2007/m07-16.pdf.

3. Agency records[3] sufficient to show:

   a. All formal or informal policies, determinations or conclusions (including underlying memoranda) concerning the scope of DOJ's use of the PII it seeks from election officials. This includes records reflecting any plans for how the agency will compile, aggregate, synthesize, match, link, or otherwise combine data obtained from an election official with any other data.

   b. Privacy or data security safeguards in place for protecting PII shared by election officials.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. *See* 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. *See Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

Please be advised that CREW intends to pursue all legal remedies to enforce its rights under FOIA. Accordingly, because litigation is reasonably foreseeable, the agency should institute an agencywide preservation hold on all documents potentially responsive to this request.

## **Fee Waiver Request**

In accordance with 5 U.S.C. § 552(a)(4)(A) and agency regulations, CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures likely will contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. *See id.* § 552(a)(4)(A)(iii). Moreover, the request primarily and

---

[3] "Agency records" here is used within the meaning of 5 U.S.C. § 552 and, unless otherwise indicated, "agency records" sought in this FOIA request and each of its numbered and lettered subparts include communications sent or received by DOJ regarding the subject matter described in that subpart.

fundamentally is for non-commercial purposes. *See, e.g.*, *McClellan Ecological v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987).

On March 25, 2025, President Trump signed Executive Order 14,248, Preserving and Protecting the Integrity of American Elections (the "Elections EO"), which, among other things, directs DHS to provide State and local officials with "access to appropriate systems for verifying the citizenship or immigration status of individuals registering to vote or who are already registered." 90 Fed. Reg. 14005 (Mar. 28, 2025). The Elections EO also instructs the DOJ to "take all appropriate action to enter into information-sharing agreements . . . with the chief State election official or multi-member agency of each State." To the extent that states are unwilling to cooperate with the federal government's expanded role, the Attorney General is called to "prioritize enforcement of Federal election integrity laws in such States" and "review for potential withholding of grants and other funds" for state and local law enforcement. *Id.*

Following the directives in the EO, the DOJ began demanding an unprecedented volume of confidential voter information, including full copies of computerized voter registration lists, from election officials across the country.[4] At least 40 states have confirmed receiving requests to date[5] seeking information ranging from voter rolls and registration applications to sensitive details such as partial Social Security and driver's license numbers.[6] The scope and aggressiveness of these demands have sparked pushback from state election officials, who are responsible for maintaining accurate voter rolls and ensuring compliance with state and federal election and privacy laws.[7] Several states have

---

[4] Matt Cohen, *All the States Where DOJ is Demanding Voting Data,* Democracy Docket (July 18, 2025), https://www.democracydocket.com/news-alerts/all-the-states-where-doj-is-demanding-voting-data/.

[5] Kaylie Martinez-Ochoa, Eileen O'Connor, and Patrick Berry, Tracker of Justice Department Requests for Voter Information, Brennan Center (last updated: October 28, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information.

[6] Peter Hancock, *Feds Demand Sensitive Illinois Voter Registration Data After State Responds,* J. Courier (Aug. 19, 2025), https://www.myjournalcourier.com/news/article/doj-illinois-voter-database-20822622.php; Tirzah Christopher, *Pa. Responds to Second Justice Department Letter Seeking Sensitive Voter Information*, PennLive (Aug. 21, 2025), https://www.pennlive.com/politics/2025/08/pa-responds-to-second-justice-department-letter-seeking-sensitive-voter-information.html; Fredreka Schouten, *Trump DOJ Seeks Voter Data, Including Social Security Numbers, from States*, CNN (Sept. 1, 2025), https://www.cnn.com/2025/09/01/politics/trump-voter-demands-social-security.

[7] Patrick Marley & Yvonne Wingett Sanchez, *DOJ hits states with broad requests for voter rolls, election data*, Wash. Post (July 16, 2025), https://www.washingtonpost.com/politics/2025/07/16/trump-voter-fraud-elections/; Yunior Rivas, *DOJ Doubles Down on Demands for Maine's Voter Data, Secretary of State Fires Back,* Democracy Docket (Aug. 20, 2025), https://www.democracydocket.com/news-alerts/doj-doubles-down-on-demands-for-maines-voter-data-secretary-of-state-fires-back.

already rejected requests for unredacted voter data, citing privacy and security concerns, [8] and are now facing federal lawsuits tied to these demands.[9] Records responsive to this FOIA request would shed light on important questions about the security of voter data raised by this unprecedented federal intervention into states' election infrastructure.

CREW is a nonprofit corporation, organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the public's right to be aware of the activities of government officials and to ensuring the integrity of the federal government. CREW uses a combination of research, litigation, and advocacy to advance its mission. CREW intends to analyze the information responsive to this request and to share its analysis with the public through reports, press releases, or other means. In addition, CREW will disseminate any documents it acquires from this request to the public through its website, www.citizensforethics.org. The release of information obtained through this request is not in CREW's financial interest.

CREW further requests that it not be charged search or review fees for this request pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) because CREW qualifies as a member of the news media. *See Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1386 (D.C. Cir. 1989) (holding non-profit a "representative of the news media" and broadly interpreting the term to include "any person or organization which regularly publishes or disseminates information to the public").

CREW routinely disseminates information obtained through FOIA to the public in several ways. For example, CREW's website receives over 150,000 page views every month. The website includes blogposts that report on and analyze newsworthy developments regarding government ethics, corruption, and money in politics, as well as numerous reports CREW has published to educate the public about these issues. These reports frequently rely on government records obtained through FOIA. CREW also posts the documents it obtains through FOIA on its website.

Under these circumstances, CREW satisfies fully the criteria for a fee waiver.

**Expedited Processing Request**

CREW requests expedited processing this FOIA request pursuant to FOIA, 5 U.S.C. § 552 and 28 C.F.R. 16.5(e). CREW is entitled to expedited processing because there is an "urgency to inform the public concerning actual or alleged Federal Government activity," and CREW "is primarily engaged in disseminating information," 5 U.S.C. § 552(6)(E)(v)(II). In

---

[8] Matt Cohen, *Oregon and Pennsylvania Are Latest to Reject DOJ Demand for Voter Data*, Democracy Docket (Aug. 22, 2025), https://www.democracydocket.com/news-alerts/oregon-and-pennsylvania-are-latest-to-reject-doj-demand-for-voter-data/.

[9] *See* Martinez-Ochoa, supra note 6; Sarah Libby, *Was a Dog Sent a Ballot? Inside the DOJ's Strange Lawsuit Seeking California Voter Data*, S.F. Chron. (July 25, 2025), https://www.sfchronicle.com/politics/article/orange-county-vote-lawsuit-20781036.php.

addition, DHS should grant expedited processing because there is "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(e)(iv).

CREW is "primarily engaged in disseminating information" to the public. This "standard 'requires that information dissemination be the main [and not merely an incidental] activity of the requestor,'" but "publishing information 'need not be [the organization's] sole occupation.'" *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 298 (D.D.C. 2017). CREW routinely disseminates information obtained through FOIA to the public in several ways. For example, CREW's website receives hundreds of thousands of page views every month. The website includes blogposts that report on and analyze newsworthy developments regarding government ethics, corruption, and money in politics, as well as numerous reports CREW has published to educate the public about these issues. These reports frequently rely on government records obtained through FOIA. CREW also posts the documents it obtains through FOIA on its website. CREW is a credible requestor and disseminator of information often relied on by major media outlets.

Further, the facts demonstrate that (1) the request concerns a matter of current exigency to the American public; (2) the consequences of delaying a response would compromise a significant recognized interest; and (3) the request concerns federal government activity. *Al-Fayed v. C.I.A.*, 254 F.3d 300, 310 (D.C. Cir. 2001).

First, the requested records concern a matter of current exigency to the American public. Since early 2025, the Department has sent letters, emails, and phone requests to state election officials seeking voter registration rolls, election records, and in some cases unredacted identifiers such as Social Security and driver's license numbers. These requests are ongoing in the leadup to the November 2026 federal and state elections. DOJ has confirmed that DOJ is sharing state voter roll information with DHS to search for non-citizens for investigatory purposes.[10] The DOJ has filed lawsuits against eight states seeking to compel them to release their full voter registration records.[11] Meanwhile, two states have submitted their full statewide voter registration lists.[12] Without timely disclosure, the public will not know how federal officials are using or storing their voter data. The exigency is increased by the fact that individuals may face criminal investigation and prosecution based on the data their states are sharing with the federal government.

Second, delaying a response would undermine voters' state and federal privacy rights. The Privacy Act of 1974 generally requires federal agencies to identify a lawful authority and purpose for requesting personal records. *See* 5 U.S.C. § 552a(b). Several states,

---

[10] *See* Jonathan Shorman, DOJ is sharing state voter roll lists with Homeland Security, Stateline (Sept 12, 2025), https://perma.cc/ZU9N-GHTC.

[11] Press Release, Justice Department Sues Six States for Failure to Provide Voter Registration Rolls, DOJ (Sept. 25, 2025), https://www.justice.gov/opa/pr/justice-department-sues-six-states-failure-provide-voter-registration-rolls.

[12] *See* Martinez-Ochoa, supra note 6.

including Oregon and Pennsylvania, have rejected DOJ's requests for unredacted voter data—such as driver's license and Social Security numbers—citing state privacy protections and the absence of clear federal authority.[13] Arizona officials have so far also refused to comply, noting that state law prohibits disclosure of the requested information and that compliance could constitute a felony.[14] California officials have also declined to date, explaining that state law bars release of the requested records.[15] Without expedited disclosure, it will be impossible for the public to evaluate whether their state and federal privacy rights are being protected in the Department's unprecedented requests for large amounts of sensitive personal data before the November 2026 elections. This may affect potential voters' willingness to share their information with state authorities to participate in next year's elections. Once such sensitive voter information is released, the harm to Americans' privacy and voting rights cannot be remedied.

Finally, the management and compelled disclosure of voter data by the Department of Justice is a federal government activity. Expedited processing will allow voters, state officials, and policymakers to assess the scope and legality of these actions before the November 2026 elections.

Separately, DOJ's demands have been the subject of national press coverage, including reports by the Associated Press, Washington Post, and San Francisco Chronicle.[16] This coverage reflects widespread public interest and questions about the integrity of the government's role. Under 28 C.F.R. § 16.5(e), this qualifies as an exceptional case warranting expedited disclosure.

The undersigned certifies that the representations in this expedited processing request are true and correct to the best of his knowledge and belief.

---

[13] Cohen, supra note 8.
[14] Jeremy Duda, *Fontes Rejects DOJ Request for Arizona Voter Database*, Axios (Sept. 2, 2025), https://www.axios.com/local/phoenix/2025/09/02/fontes-rejects-doj-voter-database.
[15] Shaun Robinson, *Vermont secretary of state says she won't share voter data with Trump administration*, Vt. Digger (Aug. 13, 2025), https://vtdigger.org/2025/08/13/vermont-secretary-of-state-says-she-wont-share-voter-data-with-trump-administration/; Sara DiNatale, *California Officials Say They Can't Hand Over Requested Voter Data Without Privacy Protections*, S.F. Chron. (Sept. 2, 2025), https://www.sfchronicle.com/politics/article/san-francisco-trump-voter-data-21027394.php.
[16] Swenson, supra note 5; Marley, supra note 7; Libby, supra note 9.

**Conclusion**

Where possible, please produce records in electronic format. If you have any questions about this request or foresee any problems in fully releasing the requested records, please email me at kfarchadi@citizensforethics.org and foia@citizensforethics.org or call me at (202) 408-5565. Also, if CREW's request for a fee waiver is denied, please contact our office immediately upon making such a determination.

Sincerely,

Kayvan Farchadi
Senior Counsel