IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,

Plaintiffs,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,

Defendants.

Civ. A. No. 26-3263 (LLA)

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ 3
INTRODUCTION ........ 5
STATEMENT OF FACTS ........ 6
LEGAL STANDARD ........ 9
I. Subject Matter Jurisdiction ........ 9
II. The Voting Rights Act ........ 9
III. Federal Rule of Civil Procedure 26(d) ........ 10
ARGUMENT ........ 11
I. Plaintiffs' Motion is Premature and Until Defendants Present Their Rule 12 Arguments to the Court, Plaintiffs are Not Entitled to Any Relief. ........ 11
II. Plaintiffs Cannot Demonstrate that Expedited Merits Discovery is Warranted. ........ 14
A. There is No Pending Motion for Emergency Injunctive Relief. ........ 15
B. Plaintiffs' Request is Premature and Seeks to Bypass Defendants' Opportunity to Brief the Court on Arguments in Support of Dismissal. ........ 16
C. The Actual Purpose of Plaintiffs' Requests is to Quickly Build the Merits of Their Case. ........ 18
D. Plaintiffs' Requests are Not Narrowly Tailored. ........ 20
E. The Burden on the Government to Comply with Plaintiffs' Requests is Very High. ........ 24
CONCLUSION ........ 27

# TABLE OF AUTHORITIES

Page(s)

Cases

*Attkisson v. Holder*,
113 F. Supp. 3d 156 (D.D.C. 2015) .......... passim
*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5
*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......... 13, 16
*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 12, 14
*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
319 F. Supp. 3d 70 (D.D.C. 2018) .......... 10, 16
*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .......... 9, 12, 14
*Guttenberg v. Emery*,
26 F.Supp.3d 88 (D.D.C. 2014) .......... passim
*Haase v. Sessions*,
835 F.2d 902 (D.C. Cir. 1987) .......... 9
*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
608 U.S. 580 (2026) .......... 5, 10
*Kaplan v. Cent. Bank of the Islamic Republic of Iran*,
896 F.3d 501 (D.C. Cir. 2018) .......... 11
*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .......... 9
*Logan v. Dep't of Veterans Affairs*,
357 F. Supp. 2d 149 (D.D.C. 2004) .......... 9, 12
*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 9
*Mich. Welfare Rts. Org. v. Trump*,
600 F. Supp. 3d 85 (D.D.C. 2022) .......... 9, 10
*Schindler Elevator Corp. v. Washington Metro. Area Transit Auth.*,
514 F. Supp. 3d 197 (D.D.C. 2020) .......... 11, 12
*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 13
*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 9
*TransUnion LLC*,
592 U.S. .......... 12
*True the Vote, Inc. v. Internal Revenue Serv.*,
No. 13-734 (RBW), 2014 WL 4347197 (D.D.C. Aug. 7, 2014) .......... 17

Statutes

5 U.S.C. § 552 ........ 8, 19
5 U.S.C. § 552(a)(3)(A) ........ 20
5 U.S.C. § 552(a)(4)(A)(i) ........ 19
5 U.S.C. § 552(a)(4)(E)(i) ........ 19
18 U.S.C. § 592 ........ 23
52 U.S.C. § 10307(b) ........ 5, 9, 10, 23

Rules

Fed. R. Civ. P. 26(d)(1) ........ 10
Fed. R. Civ. P. 26(f) ........ 10
Fed. R. Civ. P. Rule 12(a)(2) ........ 17
Fed. R. Civ. P. Rule 12(b) ........ 18
Fed. R. Civ. P. Rule 16(b) ........ 18
Fed. R. Civ. P. Rule 33 ........ 23
Fed. R. Civ. P. Rule 34 ........ 21

## **INTRODUCTION**

Defendants, through undersigned counsel, respectfully request that the Court deny Plaintiffs' motion for expedited merits discovery, ECF No. 33 ("Pl. Mot."). Plaintiffs bring this action under Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b), in order to challenge what they have cobbled together as Defendants' "conduct and rhetoric" – primarily from news clippings and federal officials' press statements – that allegedly "caused, and will continue to cause, tremendous fear for those exercising their right to vote." *See* Complaint ("Compl."), ECF No. 1 ¶ 7. By this motion, Plaintiffs seek expedited discovery, even as there is no pending motion for preliminary injunction and they have not indicated their intent to file such a motion. Plaintiffs filed the subject motion more than two weeks after they filed suit on September 18, 2026, and now, Plaintiffs are rushing to build the merits of their case. Plaintiffs state that they seek discovery in order to "shed light on Defendants' actions and plans." Pl. Mot. at 2.

This Court should deny Plaintiffs' request for a number of reasons. *First*, Plaintiffs' motion is premature in terms of the typical timeline for discovery, as the Supreme Court recently emphasized. *See Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 589 (2026) ("In order to proceed to discovery, a plaintiff must 'state a claim to relief that is plausible on its face.'" (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Defendants intend to move to dismiss Plaintiffs' Complaint on the grounds that Plaintiffs lack standing to bring their VRA claim against the government and that this Court does not have subject matter jurisdiction over this case. As such, the Court needs the opportunity to determine whether Plaintiffs have standing and the Court jurisdiction, before Plaintiffs can be afforded any relief. *Second*, assuming arguendo that the Court has jurisdiction, Plaintiffs cannot demonstrate that expedited merits discovery is warranted. Courts in this district have adopted the "reasonableness" standard which

requires the Court to assess Plaintiffs' motion with a five-factor analysis. All five factors weigh heavily in the government's favor: there is no pending motion for emergency relief that warrants expedited merits discovery; Plaintiffs' request is premature; Plaintiffs' discovery request seeks evidence to quickly build the merits of their case; the requests are not narrowly tailored; and the burden on the government to comply with the requests is very high.

For these reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Expedited Discovery. If the Court declines to authorize expedited merits discovery, Defendants are amenable to a prompt schedule for briefing Defendants' anticipated motion to dismiss addressing Plaintiffs' standing and the Court's subject-matter jurisdiction.

## STATEMENT OF FACTS

Defendants were served with Plaintiffs' Complaint on September 18, 2026, after Plaintiffs filed suit on the same day. *See* Summons, ECF No. 3. The Complaint includes one cause of action. In it, Plaintiffs allege that "Defendants' past and present actions" violate Section 11(b) of the VRA. Compl. ¶ 237. It appears that Plaintiffs have sewn together – primarily from news clippings and federal officials' press statements – what they contend are "Defendants' conduct and rhetoric"[1] that allegedly "caused, and will continue to cause, *tremendous* fear for those exercising their right to vote." Compl. ¶ 7.

[1] Throughout the Complaint, Plaintiffs vary their description of the Defendants' alleged "conduct and rhetoric." *See* Compl. ¶ 7 ("Defendants' conduct and rhetoric"); ¶ 11 ("the Administration's intimidating actions and rhetoric"); ¶¶ 61, 227 ("Defendants' election-related rhetoric and conduct"); ¶ 99 ("Defendants' escalating rhetoric about using federal law enforcement during the 2026 elections"); ¶¶ 186, 200 ("Defendants' anti-immigrant rhetoric"); and ¶¶ 221, 224, 231 ("Defendants' actions and rhetoric").

Plaintiffs allege that this rhetoric is based on public statements made by Secretary of Homeland Security Markwayne Mullin in March, August, and September 2026 (*id.* ¶¶ 106, 108, 110-111); White House Executive Border Czar Tom Homan in March and September 2026 (*id.* ¶¶107, 112); Attorney General Todd Blanche in May 2026 (*id.* ¶ 109); and FBI Director Kash Patel in September 2026 (*id.* ¶ 113). *See* Pl. Mot. at 3. In addition, Plaintiffs allege that updates to the 2017 edition of a manual published on the Department of Justice's ("DOJ") website, together with Department of Homeland Security ("DHS") investigations into unlawful voting and registration offenses[2] constitute Defendants' unlawful conduct. Compl. ¶¶ 114-131, 163-165; Pl. Mot. at 3. In their Complaint, Plaintiffs state, "[t]o prevent these ongoing harms," they "seek a declaration that Defendants have engaged in conduct" violating Section 11(b) of the VRA and an injunction. Compl. ¶ 14.

More than two weeks after filing the Complaint, on October 5, 2026, Plaintiffs filed this motion for expedited merits discovery. By their motion, Plaintiffs seek discovery "that would shed light on Defendants' actions and plans and allow Plaintiffs to seek emergency relief as necessary." Pl. Mot. at 3. They concede that they are "evaluating the possibility and necessity of seeking a preliminary injunction," *id.* at 5, but to date have filed nothing. They further admit that the discovery serves to "obtain information central to Plaintiffs' claims" in this case. *Id.* at 7. Plaintiffs' proposed discovery requests are presented as four requests for production – two of

[2] For clarification, Defendants refer the Court to: U.S. Dep't of Homeland Sec., *Secretary Mullin and Attorney General Blanche Hold Press Conference on Recent Voter Fraud Charges Against Non-Citizens in Minnesota*, DHS Press Release (Oct. 1, 2026), available online: https://www.dhs.gov/news/2026/10/01/secretary-mullin-and-attorney-general-blanche-hold-press-conference-recent-voter.

which seek the production of records obtained during litigation[3] arising under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, that were not initiated by any of the Plaintiffs here – and two interrogatories. Pl. Mot. at 1-2. *See* Plaintiff's Exhibit A ("Pl. Ex."), ECF No. 33-1 at 1-3 (requests for production); Pl. Ex. B, ECF No. 33-2 at 1-2 (interrogatories). There are no declarations attached to Plaintiffs' motion.

On October 9, 2026, the Court entered a Minute Order stating that the Court is:

> contemplating consolidation of the following cases under Federal Rule of Civil Procedure 42(a): *League of United Latin American Citizens* [*LULAC*] *v. U.S. Department of Homeland Security*, 26-CV-3157; *National Association for the Advancement of Colored People* [*NAACP*] *v. U.S. Department of Homeland Security*, 26-CV-3263; and *DSCC v. U.S. Immigration and Customs Enforcement*, 26-CV-3330.

Min. Order, Oct. 9, 2026. The Court ordered that, "on or before October 16, 2026, the parties in the three cases shall collectively meet and confer and file a joint status report identical across each docket providing their respective positions on consolidation." *Id.* As further explained in this brief, Defendants note that the Court's decision on this motion will bear some impact on the other two cases, regardless of whether all three cases are consolidated.

Defendants have not yet responded to Plaintiffs' Complaint.[4] There is no pending motion for injunctive relief in this case.

---

[3] Plaintiffs seek copies of the production of records obtained through these FOIA litigation matters: *Dem. Nat'l Comm. v. U.S. Dep't of Justice, et al.*, No. 26-cv-0825 (D.D.C. filed Mar. 10, 2026) (referred to as "*DNC*"); and *Cit. for Resp. & Ethics in Washington v. U.S. Dep't of Justice*, No. 25-cv-4426 (D.D.C. filled Dec. 19, 2025) (referred to as "*CREW*").

[4] Defendants intend to challenge Plaintiffs' Complaint, *inter alia*, under Rule 12(b) of the Federal Rules of Civil Procedure on the basis that Plaintiffs lack standing and that this Court lacks subject matter jurisdiction over Plaintiffs' single count alleging a violation under the Voting Rights Act. *See* Compl. ¶¶ 235-242.

## LEGAL STANDARD

### I. Subject Matter Jurisdiction

Federal district courts, as courts of limited jurisdiction, "possess only that power conferred by [Article III of the] Constitution and [by] statute." *Logan v. Dep't of Veterans Affairs*, 357 F. Supp. 2d 149, 152 (D.D.C. 2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "There is a presumption against federal court jurisdiction and the burden is on the party asserting the jurisdiction, the plaintiff[s] in this case, to establish that the Court has subject matter jurisdiction over the action." *Id.* at 153 (internal citation omitted). *See Mich. Welfare Rts. Org. v. Trump*, 600 F. Supp. 3d 85, 96 (D.D.C. 2022) (discussion of subject matter jurisdiction in Voting Rights Act case).

The requirement that plaintiffs establish standing in their case "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he defect of standing is a defect in subject matter jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan*, 504 U.S. at 560-61). The standing inquiry is the same for individuals and for organizations. That is, "organizations must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393–94 (2024) (internal citation omitted).

### II. The Voting Rights Act

Section 11(b) of the Voting Rights Act ("VRA"), 52 U.S.C. § 10307(b), prohibits a

"person, whether acting under color of law or otherwise," to "intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote . . ." 52 U.S.C. § 10307(b). While Section 11(b) of the VRA has been found to "create[] a private right of action," plaintiffs must still meet Article III standing requirements. *Mich. Welfare Rts. Org.*, 600 F. Supp. 3d at 106. "Any threatened harm that is not both 'real and immediate' is 'too speculative' to support standing." *Id.* at 108-09 (internal citation omitted) (finding that organizational plaintiffs, including NAACP, did not have standing in Voting Rights Act case).

**III. Federal Rule of Civil Procedure 26(d)**

Under Rule 26(d)(1) of the Federal Rules of Civil Procedure, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). "[E]xpedited discovery is not the norm." *Guttenberg v. Emery*, 26 F.Supp.3d 88, 97 (D.D.C. 2014).

Indeed, the Supreme Court has recently emphasized that discovery follows the resolution of a Rule 12 motion. *Hikma Pharms. USA Inc.*, 608 U.S. at 589. In this district, Local Civil Rule 26.2(a), proscribes a specific order for discovery: except "when authorized under these rules or by order or agreement of the parties, a party may not seek discovery from any sources before the parties have conferred as required by Fed. R. Civ. P. 26(f)." LCvR 26.2(a).

Courts in this district assess motions for expedited discovery under a "reasonableness" standard. *Guttenberg*, 26 F.Supp.3d at 97 (expedited discovery was not warranted). *See also Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 103 (D.D.C. 2018) (denying motion for expedited discovery). When assessing a motion for expedited discovery, the Court will consider the following five factors:

> (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.

*Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015) (quoting *Guttenberg*, 26 F.Supp.3d at 98). Expedited discovery is reserved for exceptional circumstances. *Id.* at 161.

## ARGUMENT

### I. Plaintiffs' Motion is Premature and Until Defendants Present Their Rule 12 Arguments to the Court, Plaintiffs are Not Entitled to Any Relief.

Defendants intend to challenge whether Plaintiffs, as organizations, have standing in this VRA action and, if so, whether this Court has subject matter jurisdiction over Plaintiffs' single VRA claim. Defendants contend that Plaintiffs do not have standing and will not be able to survive a Rule 12(b) motion to dismiss. However, Defendants have not had the opportunity to raise their challenges yet. As Defendants will explain with greater detail in their forthcoming motion to dismiss, Plaintiffs lack Article III standing to bring their VRA claim. Consequently, they are not entitled to expedited discovery, or any other relief. *See Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018) ("[W]ithout jurisdiction, a court lacks power to consider a case at all." (citation omitted)). And Plaintiffs have not established a basis for conducting merits discovery before Defendants have had an opportunity to raise their threshold jurisdictional and standing defenses.

"[W]ithout jurisdiction, a court lacks power to consider a case at all." *Schindler Elevator Corp. v. Washington Metro. Area Transit Auth.*, 514 F. Supp. 3d 197, 202 (D.D.C. 2020), *aff'd,* 16 F.4th 294 (D.C. Cir. 2021) (quoting *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018)). "To that end, federal courts are empowered—and indeed, have an obligation—to undertake an independent investigation to assure itself of its own subject-matter

jurisdiction." *Id.* at 202. The Court must presume it does not have jurisdiction. *Logan*, 357 F. Supp. 2d at 152. "And if it is determined that the court does not have subject-matter jurisdiction, it cannot afford plaintiffs any relief—injunctive or otherwise." *Schindler Elevator Corp.*, 514 F. Supp. 3d at 202 (denying motion for preliminary injunction).

Plaintiff's motion for expedited merits discovery is premature because there are questions about whether Plaintiffs have standing to bring a VRA claim. On the face of Plaintiffs' Complaint, Plaintiffs allege, in part, that "[b]ecause of the Administration's intimidating actions and rhetoric, across the country, Plaintiffs' members and other voters credibly fear that their participation in this November's midterm elections will subject them to physical force and increased surveillance by the federal government." Compl. ¶ 11. However, Plaintiffs cannot demonstrate to the Court – based on news clippings and federal officials' press statements, updates to the DOJ website, and DHS investigations – that (1) Plaintiffs and their members have suffered or will suffer a "concrete, particularized, and actual or imminent" injury; (2) said injury was likely caused by the Defendants, and (3) the Court can provide Plaintiffs and their members any judicial relief. *TransUnion LLC*, 592 U.S. at 423.

At most, Plaintiffs detail voluntary responses to their speculative fears that armed federal agents will be deployed to polling locations in the 2026 General Election. The Supreme Court has "repeatedly reiterated that 'threatened injury must be certainly impending to constitute injury in fact,' and that 'allegations of possible future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *see also All. for Hippocratic Med.*, 602 U.S. at 381 ("[T]he injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon").

None of the Plaintiffs have demonstrated a certainly impending injury-in-fact. Plaintiffs

do not point to any policy or statement that DHS intends to deploy armed federal agents to polling locations. Instead, Plaintiffs allege injuries based on fears that DHS *might* deploy such agents. *See, e.g.*, Compl. ¶ 177 ("Defendants' actions tell [NAACP] members that armed ICE officers may be inside or near the polling place[.]"); *id.* ¶ 224 ("AFT members fear that armed federal law enforcement officers may be inside or near the polling place[.]"); *id.* ¶ 232 ("IUPAT members are afraid that armed federal officers may be inside or near the polling place[.]"). For example, one SEIU member "fears" that her parents "could be targeted" if they voted in person, rather than by mail, "because they resemble and speak like individuals who have been detained by ICE." *Id.* ¶ 220. Another member intends to vote "with friends and family for safety" because the member was previously stopped by ICE in Minnesota. *Id.* ¶ 219. And an OCA member is purportedly "considering refraining from election-related activities" because the member "witnessed the impact" of immigration enforcement operations "on immigrant and refugee communities" in Minnesota. *Id.* ¶¶ 201–202. None of these speculative fears establish a concrete, imminent injury traceable to the challenged conduct.

Importantly, "psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). What matters "is the *reality* of the threat of [future] injury," not a plaintiff's "subjective apprehensions." *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983). Thus, the "emotional consequences" of government action "simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant." *Id.*

Many of Plaintiffs' asserted harms appear to be directed toward DHS's enforcement of immigration and criminal laws generally, rather than Plaintiffs' specific challenge in this case. For instance, Plaintiffs allege that a MN8 member "who needed new dentures ate soft food for

months" because she heard "that immigration agents detained people even on their way to medical appointments." Compl. ¶ 211. And NUL members are purportedly intimidated by "the prospect of federal law enforcement at polls" based on "the extensive history of suppression of Black voters," the "increased ICE presence and enforcement activity," and "the long-term National Guard occupation of Washington, D.C." *Id.* ¶ 209.

The Supreme Court has made clear that plaintiffs cannot "manufacture standing" by "inflicting harm on themselves" or by voluntarily changing their behavior "based on [] fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. The purported diversion of resources "to monitor and warn voters of ICE presence at the polls" amounts to nothing more than a voluntary, self-directed operational change in response to speculative fears. Compl. ¶ 175; *see All. for Hippocratic Med.*, 602 U.S. at 394 ("[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to [counteract that action]"). Such self-imposed harm cannot create an Article III case or controversy.

Therefore, at this stage, Defendants request that the Court deny Plaintiffs' motion for expedited merits discovery because the Court must presume it does not have subject matter jurisdiction over Plaintiffs' claims and allow Defendants the opportunity to fully present these arguments to the Court. Until Defendants brief the Court on these issues, Plaintiffs' request for expedited merits discovery is premature and the Court cannot provide Plaintiffs any relief.

## II. Plaintiffs Cannot Demonstrate that Expedited Merits Discovery is Warranted.

Setting aside Defendants' contention that Plaintiffs lack standing and the Court does not have jurisdiction, Plaintiffs cannot demonstrate that expedited discovery is warranted in this case. This district reviews motions for expedited discovery under a "reasonableness" standard, as

articulated in *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97-98 (D.D.C. 2014). Under this approach, courts primarily examine five factors, although the list of factors is not exhaustive: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Guttenberg*, 26 F. Supp. 3d at 98.

These factors weigh heavily against granting Plaintiffs' expedited merits discovery request. First, there is no pending motion for injunctive relief. Second, Plaintiffs' motion is made more than two weeks after they filed their Complaint and Defendants have not had the opportunity to brief the Court on its arguments in support of a motion to dismiss. Third, the actual purpose of Plaintiffs' request is to quickly build the merits of their case, which is not a reason to bypass the Court's investigation of standing and jurisdiction. Fourth, Plaintiffs' requests are not narrowly tailored. Lastly, the burden on the government to comply with Plaintiffs' requests is very high. For the following reasons, the Court should deny Plaintiffs' motion.

A. <u>There is No Pending Motion for Emergency Injunctive Relief.</u>

Requests for expedited discovery are not the norm and often rise out of the need to support a pending motion for a preliminary injunction. *Guttenberg*, 26 F.Supp.3d at 97. Where there is a pending motion for preliminary injunction, a plaintiff may want to conduct narrowly tailored discovery to "flesh[] out a preliminary injunction motion." *Id.* In contrast, however, expedited discovery requests that go to the "merits of their case" and are "not narrowly tailored to reveal information related to the preliminary injunction as opposed to the case as a whole" are not permitted. *Id.* at 98. Merits discovery would enable Plaintiffs to "substantially advance [their] claim on the merits." *Guttenberg*, 26 F.Supp.3d at 98 (discovery regarding a breach of contract

would advance the plaintiff's claim alleging a breach of contract).

In *Dunlap v. Presidential Advisory Commission on Election Integrity*, the Court considered whether "to grant expedited discovery in the form of leave to serve a subpoena," when there was already an injunction in place. *Dunlap*, 319 F. Supp. 3d at 106. It reasoned that "[t]he Court's enforcement of [that] injunction in short order [would] ensure the documents to which Plaintiff is entitled are furnished by Defendants," but ultimately found that plaintiff failed to carry his burden for expedited discovery and denied the request. *Id.* at 105-06.

Here, unlike in *Dunlap*, there is no request for emergency relief pending – or even contemplated at this stage in the proceeding. Pl. Mot. at 3. Plaintiffs concede that expedited discovery would merely "shed light on Defendants' actions and plans and allow Plaintiffs to seek emergency relief *as necessary*." Pl. Mot. at 3 (emphasis added). Plaintiffs admit that they are only "carefully evaluating the possibility and necessity of seeking a preliminary injunction." Pl. Mot. at 5-6. In addition, an examination of the proposed discovery requests, as discussed in this brief, demonstrates that Plaintiff's request seeks information to support the viability of their claims in this "case as a whole." *Guttenberg*, 26 F.Supp.3d at 98. Because there is no emergent issue necessitating discovery and Plaintiffs do not claim the existence of an emergency, they are not entitled to discovery on an expedited basis.

B. <u>Plaintiffs' Request is Premature and Seeks to Bypass Defendants' Opportunity to Brief the Court on Arguments in Support of Dismissal.</u>

Courts must consider the timing of a motion for expedited discovery, especially as to "how long before the normal discovery process the motion comes." *Attkisson*, 113 F. Supp. 3d at 165. "Because discovery typically occurs after the resolution of motions to dismiss . . . presenting a motion for expedited discovery prior to rulings on motions to dismiss is often disfavored." *Id.*

(citing to *Guttenberg*, 26 F. Supp. 3d at 99; *True the Vote, Inc. v. Internal Revenue Serv.,* No. 13-734 (RBW), 2014 WL 4347197, at *8 (D.D.C. Aug. 7, 2014)). "[M]ost important for the Court's reasonableness analysis is the pendency of the defendants' motion to dismiss." *Guttenberg*, 26 F. Supp. 3d at 99. This is, in part, because if the Court were to order expedited merits discovery "when the case may later be dismissed for failure to state a claim," this could require the defendants "to expend significant resources responding to discovery requests in a case where plaintiffs did not have a viable cause of action" to start with. *Id.*

In their motion, Plaintiffs state only that the timing of their request weighs in their favor because "the ordinary discovery process likely would not produce material on a timeline necessary to address the violations that give rise to Plaintiffs' claim." Pl. Mot. at 8. But Plaintiffs' asserted timing concerns do not justify imposing broad cross-agency merits discovery on an expedited basis. It is evident that Plaintiffs rely on "Defendants' conduct and rhetoric" (Compl. ¶ 7) that occurred months before Plaintiffs filed suit, yet they waited until September 18, 2026, to bring this action. For instance, Plaintiffs allege that President Trump's January 11, 2026 statements and former White House Press Secretary Karoline Leavitt's February 2026 statements give rise, in part, to the Plaintiffs' VRA claim. Compl. ¶¶ 102-103. But Plaintiffs waited until mid-September 2026 to file this case.

Still, under Rule 12 of the Federal Rules of Civil Procedure, as United States agencies and United States officers sued in their official capacity, Defendants "must serve an answer to a complaint . . . within 60 days after service on the United States attorney." Fed. R. Civ. P. Rule 12(a)(2). If the Court were to order expedited merits discovery – for Plaintiffs to evaluate "the possibility and necessity of seeking a preliminary injunction" (Pl. Mot. at 5-6) – the government would have to expend significant time and resources on objecting to and responding to Plaintiffs'

requests, while delaying the opportunity to assert its defenses under Rule 12(b). Fed. R. Civ. P. Rule 12(b).

As an alternative to discovery at this juncture, Defendants would be amenable to a shorter briefing schedule for their motion to dismiss. *See* Fed. R. Civ. P. Rule 16(b).

C. The Actual Purpose of Plaintiffs' Requests is to Quickly Build the Merits of Their Case.

The Court also assesses the stated purpose of a plaintiffs' motion, which includes an examination for urgency in seeking expedited discovery. *Guttenberg*, 26 F.Supp.3d at 98. When the moving party seeks discovery that goes to the "core issues in the case" and potentially "fend off" a motion to dismiss, the Court is likely to deny the request. *Id.* at 98-99. A demonstrated lack of urgency "weighs against granting expedited discovery." *Attkisson*, 113 F.Supp.3d at 164. (citing *Guttenberg*, 26 F. Supp. 3d at 98).

Plaintiffs vaguely state that their motion has a "clear and urgent purpose." Pl. Mot. at 7. The relief they seek in this case "depends on whether, where, and how Defendants may or intend to deploy law enforcement during voting, and only Defendants know the answer." *Id*. But this is merits discovery. Plaintiffs want to find out whether the merits of their VRA claim can survive. An examination of the proposed discovery requests shows that they are looking for documents and information that backup their claims that the press statements, updates to the DOJ website, and DHS investigations, together with Defendants' rhetoric, is based on a planned scheme to "intimidate, threaten, or coerce" Plaintiffs' members and other voters. Compl. ¶¶ 99-113, 235-242. *See Gutenberg*, 26 F.Supp.3d at 98 (plaintiff requested depositions that went to the "heart of the case").

In order to quickly conduct merits discovery on their claims,[5] Plaintiffs ask the Court to force the government to circumvent the FOIA, 5 U.S.C. § 552, and simply produce "documents Defendants have already compiled" in two FOIA litigation matters – *DNC* and *CREW*. Pl. Mot. at 6; Pl. Ex. A; Pl. Ex. B. However, Plaintiffs cannot – and should not be permitted to – circumvent FOIA. Plaintiffs' reliance on the *DNC* and *CREW* FOIA litigation matters does not establish that the requested materials can be produced through expedited civil discovery without fees and costs, *i.e.,* with minimal burden to them. For example, the FOIA provides for the charging of fees "applicable to the processing of requests." 5 U.S.C. § 552(a)(4)(A)(i). In FOIA litigation, a plaintiff's attorney who has "substantially prevailed" may be entitled to reasonable attorney fees and litigation costs. 5 U.S.C. § 552(a)(4)(E)(i). But Plaintiffs, here, seek to bypass these requirements.

Further, under FOIA and relevant agency regulations, the records searched for and identified as potentially to the FOIA request must be processed and reviewed for responsiveness and protection from disclosure. Federal agencies have the discretion to assert any of the nine FOIA exemptions, which concern, in part, relevance, privilege, confidentiality restrictions, any applicable protections for law-enforcement-sensitive or operational information. This all takes federal agencies time to complete. Plaintiffs cannot ask the Court to order Defendants to disregard the FOIA for the Plaintiffs' benefit.

Moreover, Request Nos. 1 and 2 are beyond the scope of seek more than the previously released records in *DNC* and *CREW* - but all documents that that "any Defendant," i.e., DOJ and

[5] It is unclear why Plaintiffs did not simply contact the plaintiffs (FOIA requesters) in *DNC* and *CREW* for copies of production instead of taking the time to request copies of production through expedited merits discovery requests in this case.

its offices, DHS and its components and offices, and FBI, "has located, collected, or flagged as *potentially or actually responsive* to that request," including documents that it has either "produced, withheld, or list on any *Vaughn* index." Pl. Ex. A, ECF No. 33-1 at 1 (Definition, "Identified as Responsive"). Plaintiffs have not shown why any records already released in those matters cannot be obtained from the requesters or through the ordinary FOIA process. Plaintiffs must comply with the process for requesting records from federal agencies. *See* 5 U.S.C. § 552(a)(3)(A). In addition, Plaintiffs cite no legal authority under the FOIA or otherwise to use this civil case as a means of obtaining FOIA records in *DNC* and *CREW*. Therefore, this factors weighs heavily in Defendants' favor.

D. Plaintiffs' Requests are Not Narrowly Tailored.

A court must also inquire into the "breadth of the proposed discovery requests." *Attkisson*, 113 F. Supp. 3d at 162 (citing *Guttenberg*, 26 F. Supp. 3d at 98). The requests "must be limited in scope to requesting specific records of information . . . ." *Id.* "For instance, when a Doe defendant in a copyright-infringement case has been identified by the alleged use of a particular Internet Protocol ('IP') address at a specific date and time, the plaintiff may seek limited discovery to identify the user of that IP address." *Id.* Or in a civil rights violation case, a plaintiff who is trying to learn the full identify of law enforcement officers may seek specific information in "tailo[ed] discovery requests." *Id.*

However, "when a plaintiff's discovery requests 'would go to the heart of th[e] case,' such that they become discovery that seeks to prove an element of the plaintiffs' case, a request for expedited discovery is inappropriate." *Id.* at 163 (quoting *Guttenberg*, 26 F.Supp.3d at 98). Conducting "merits discovery," *i.e.,* "discovery that seeks to establish the truth of their allegations," is "not at all narrowly tailored." *Id.* at 164. Thus, district courts generally deny

such requests. *Id.*

Here, Plaintiffs concede that their requests for production and interrogatories are "tailored to obtain information *central to Plaintiffs' claims*." Pl. Mot. at 7 (emphasis added). It is irrelevant that Plaintiffs believe their request are limited to four documents requests and two interrogatories, because the relevant inquiry for the Court is whether these requests go to the truth of the allegations. *Attkisson*, 113 F. Supp. 3d at 162-64.

Requests for Production

Upon examination of Plaintiffs' remaining requests for production – setting aside Request Nos. 1 and 2, which are improper – the requests seek documents and things that support the merits of their VRA claim and are not narrowly tailored.

Request No. 3 is objectionable for a number of reasons under Fedal Rule of Civil Procedure Rule 34. Fed. R. Civ. P. Rule 34. *First*, this request is compound, with at least nine discreet subparts (brackets added to show subparts):

> [1] All Documents pertaining to any assessment, analysis, or determination regarding actual or anticipated threats relating to or during the 2026 General Election in the vicinity of a Voting Location, [2] including, but not limited to, a polling location, [3] drop box, or [4] election office, [5] at the time of Your response that governs whether and under what circumstances Your personnel may be present at, [6] enter, or [7] conduct operations in the vicinity of a Voting Location during the 2026 General Election, [8] including any Document that rescinds, suspends, supersedes, or replaces (a) the guidance on polling-place activity in the December 2017 edition of DOJ's Federal Prosecution of Election Offenses manual, or [9] (b) the DHS protected-areas policy rescinded on or about January 20, 2025.

Pl. Ex. A, ECF No. 33-1 at 2 (brackets added). *Second*, this single request is significantly overbroad because the term "Defendants," "You" and "Your" includes multiple defendants and entities, some which are not a part of this lawsuit. The term includes DHS, Secretary Mullin, ICE, Acting Director Venturella, DOJ, Attorney General Blanche, FBI, Director Patel, and White

House Border Czar Homan. It also names offices and entities that were not named in this case: DHS components – "Homeland Security Investigations, U.S. Customs and Border Protection, U.S. Citizenship and Immigration Services, and Federal Protective Service;" DOJ divisions – "Civil Rights Division, Criminal Division, and the Offices of the Attorney General;" and "together with the officers, employees, and agents of each." Pl. Ex. A, ECF No. 33-1 at 1 (Definitions). The definition of "Defendants," "You," and "Your" substantially expands the scope of discovery and would require broad, duplicative, cross-component searches without a showing that each entity is likely to possess relevant information. *Third*, the request seeks documents and information that may be privileged; the request is speculative; the request is burdensome; and overly time consuming and costly to the government. Pl. Ex. A, Dkt. No. 33-1 at 2. *Fourth*, the request combines several broad and distinct categories of materials, including threat assessments, operational authorities, policies governing personnel near voting locations, and documents allegedly rescinding or replacing prior DOJ and DHS guidance. The request therefore requires unrelated searches across multiple agencies and components and is not narrowly tailored for expedited discovery.

Request No. 4 fares no better than No. 3 and is objectionable also for a number of reasons. *First*, this request is compound, with at least five discreet subparts (brackets added to show subparts):

> [1] The following Documents, [2] together with any Document that supplements or supersedes either of them: [3] (a) the internal DHS guidance, reported by CNN on August 31, 2026, directing Homeland Security Investigations to expand elections-related investigations in at least nine states between early September and mid-October 2026, *see* Compl. ¶ 117; and [4] (b) the 2026 DHS memorandum or directive instructing Homeland Security Investigations to coordinate with U.S. Citizenship and Immigration Services in identifying, investigating, or referring for prosecution individuals believed to have registered or voted while not U.S. citizens, [5] including all Documents that comprise or otherwise communicate this

memorandum or directive, *see* Compl. ¶¶ 114–15, 118, 121.

Pl. Ex. A, ECF No. 33-1 at 3 (brackets added). *Second*, as explained for Request No. 3, this single request is significantly overbroad because the term "Defendants," "You," and "Your" includes multiple defendants and entities, some which are not a part of this lawsuit. The definition substantially expands the scope of discovery and would require broad, duplicative, cross-component searches without a showing that each entity is likely to possess relevant information. *Third*, the request seeks documents and information that may be privileged; the request is speculative; and the request is burdensome, overly time consuming and costly to the government. Pl. Ex. A, ECF No. 33-1 at 3.

Interrogatories

Upon examination of Plaintiffs' two interrogatories, these questions are objectionable for a number of reasons under Fedal Rule of Civil Procedure Rule 33. Fed. R. Civ. P. Rule 33.

Interrogatory No. 1. *First*, this interrogatory is compound, with at least three discreet subparts (brackets added to show subparts):

> [1] Identify all policies, [2] training materials, or [3] criteria Defendants use, have used, or plan to use to avoid conducting operations, including within, at, or in proximity to Voting Locations, that would risk violating federal and state prohibitions on voter intimidation, including under 52 U.S.C. § 10307(b) and 18 U.S.C. § 592, for the upcoming November 2026 elections.

Pl. Ex. A, ECF No. 33-1 at 3 (brackets added). *Second*, as explained for Request No. 3, this interrogatory is significantly overbroad because the term "Defendants" includes multiple defendants and entities, some which are not a part of this lawsuit. *Third*, the request seeks documents and information that may be privileged; the request is speculative; the request is burdensome, overly time consuming and costly to the government; and the request fails to specify a time period for any subpart. Pl. Ex. B, ECF No. 33-1 at 2.

Interrogatory No. 2. *First*, this interrogatory is compound, with at least three discreet subparts (brackets added to show subparts):

> [1] Identify all policies, [2] training materials, or [3] criteria Defendants use, have used, or plan to use to ensure their investigations do not inadvertently or unlawfully target or otherwise intimidate, coerce, or threaten U.S. citizens during voting periods, including naturalized citizens, citizens who live in mixed immigration status households, derivative citizens, and U.S. citizens who petitioned for spousal citizenship.

Pl. Ex. A, ECF No. 33-1 at 3 (brackets added). *Second*, as explained for Request No. 3, this interrogatory is significantly overbroad because the term "Defendants" includes multiple defendants and entities, some which are not a part of this lawsuit. *Third*, the request seeks documents and information that may be privileged; the request is speculative; and the request is burdensome, overly time consuming, and costly to the government. Pl. Ex. B, ECF No. 33-1 at 2. Although Plaintiffs define a general period beginning January 20, 2025, the requests remain temporally expansive because they seek all historical, current, and planned policies, training, criteria, analyses, and directives through the date of production. They are not confined to final, operative materials applicable to the November 2026 election period.

For the above reasons, it is evident that Plaintiffs are asking the Court to allow them to conduct merits discovery. They have even admitted as much. Pl. Mot. at 7. Upon examination of the proposed discovery requests, the requests for production and interrogatories are not narrowly tailored and objectionable on the grounds that they contain multiple subparts, are overbroad, request privileged documents and information, speculative, burdensome, overly time consuming, and costly to the government. *Attkisson*, 113 F. Supp. 3d at 163-64; *Guttenberg*, 26 F.Supp.3d at 98-99. Therefore, this factor weighs heavily in favor of Defendants.

E. <u>The Burden on the Government to Comply with Plaintiffs' Requests is Very High.</u>

Lastly, the Court examines the burden for Defendants to comply with the proposed discovery. "When the burden is low, such as responding to only one or a few discovery requests, then this factor supports granting the motion for expedited discovery." *Attkisson*, 113 F. Supp. 3d at 165 (citation omitted). "By contrast, when the defendants would have to 'expend[ ] a huge amount of resources' to comply with expedited discovery, the factor supports denying the motion for expedited discovery." *Id.* (internal citation omitted).

Plaintiffs assert that "Defendants are not unreasonably burdened by expedited discovery," but this is not so. Pl. Mot. at 7. Plaintiffs state that documents responsive to Request Nos. 1 and 2 "have already [been] identified, located, and reviewed" in the *DNC* and *CREW* litigation. *Id.* Surprisingly, Plaintiffs seek production and sworn interrogatory responses within five calendar days of any order, with all production completed by October 19, 2026. Pl. Mot. at 8. That schedule is not realistic. It would require multiple agencies and components to identify custodians; search potentially responsive repositories; collect and deduplicate records; review for responsiveness, privilege, confidentiality restrictions, and law-enforcement or operational sensitivity; coordinate agency positions; prepare any required privilege log; and provide verified interrogatory responses. These tasks cannot reliably be completed across DHS, ICE, HSI, CBP, USCIS, FPS, DOJ, and FBI in the timeframe that Plaintiffs propose.

As articulated above in this brief, Plaintiffs cannot circumvent the requirements of the FOIA for submitting a request to federal agencies for public records. Plaintiffs' assertion that records responsive to Request Nos. 1 and 2 have already been "identified, located, and reviewed" (Pl. Mot. at 7) in the *DNC* and *CREW* matters does not eliminate these burdens. Prior FOIA processing does not establish that records can be produced in civil discovery without further review for responsiveness, relevance, privilege, confidentiality restrictions, and law-enforcement or

operational sensitivity.

In addition, although Plaintiffs attempt to frame Request Nos. 3 and 4 as narrow requests that seek "current policy, not every relevant communication" and "two already-identified documents" (Pl. Mot. at 7-8), as already explained, the requests as written (Pl. Ex. A and B) are objectionable. Similarly, the proposed interrogatories are not just "two sworn answers about Defendants' own practices" (Pl. Mot. at 8), as explained above.

Should the Court find that Plaintiffs have standing and jurisdiction, prior to Defendants filing a motion to dismiss, and order the government to respond to Plaintiffs' proposed discovery requests, Defendants intend to serve objections to these proposed requests. Asserting and defending these objections, as well as providing any responses that require review and privilege analysis – on any expedited basis – will take significant time and coordination by Defendants' undersigned counsel, together with agency counsel at DHS, ICE, DOJ, and FBI, as well as leadership for these Defendants.

Lastly, if the Court grants the Plaintiffs' motion for expedited discovery and order discovery on an expedited basis, and then later consolidate this case and two related cases – *LULAC, et al. v. DHS, et al.* and *DSCC, et al. v. ICE, et al.* – the burden on the government to respond to broad cross-agency merits discovery on an expedited basis will be tremendous. The time and resources for very important, emergent matters will be reduced in order to meet a rushed merits discovery schedule for this case. It is highly likely that the Plaintiffs in the two related cases will subsequently move for a similar order, putting even higher of a burden not only on Defendant's undersigned counsel, but also all the agencies, offices, attorneys, and staff in these three cases. Therefore, this factor undoubtedly weighs heavily in Defendants' favor.

## CONCLUSION

WHEREFORE, Defendants respectfully request that the Court deny Plaintiffs' motion for expedited merits discovery. Defendants are amenable, however, to a shortened briefing schedule for the government to brief this Court as to reasons why Plaintiffs do not have standing and this Court does not have subject matter jurisdiction over this case.

Dated: October 13, 2026
Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *__/s/ Catherine J. Malycke__*
CATHERINE J. MALYCKE
VA Bar No. 84952
Assistant United States Attorney
Civil Division
601 D Street, NW
Washington, D.C. 20530
Tel: (202) 809-3495
Catherine.Malycke@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | Civ. A. No. 26-3263 (LLA) |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' opposition to Plaintiffs' motion for expedited discovery, and the entire record herein, it is hereby

ORDERED that Plaintiffs' motion for expedited discovery is DENIED.

SO ORDERED:

DATED

LOREN L. ALIKHAN
United States District Judge