**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>*Defendants*. | Case No. 1:26-cv-03263-LLA |

**PLAINTIFFS' REPLY IN SUPPORT**
**OF MOTION FOR EXPEDITED DISCOVERY**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 3

ARGUMENT ..... 5

I. Defendants' Potential Unfiled Motion to Dismiss Is Not a Basis to Deny Expedited Discovery. ..... 5

II. Every Reasonableness Factor Favors Plaintiffs. ..... 8

A. Expedited Discovery Is Warranted Without Pending Emergency Relief Filed. ..... 9

B. The Requests Are Narrow. ..... 10

C. The Purpose Is to Determine the Scope and Necessity of Emergency Relief. ..... 13

D. The Burden on Defendants Is Minimal. ..... 17

E. The Timing Does Not Weigh Against Plaintiffs. ..... 18

III. The Court Should Order Production on a Short and Certain Schedule. ..... 20

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFL-CIO v. Dep't of Lab.*,
349 F.R.D. 243 (D.D.C. 2025)....................19

*Ala. Coal. for Immigrant Just. v. State*,
No. 2:24-cv-1254-AMM, 2024 WL 7158360 (N.D. Ala. Oct. 1, 2024)....................14

*Am. Fed'n of Lab. And Cong. Indus. Orgs. v. Dep't of Lab.*,
No. 25-0339, 2025 WL 556325 (D.D.C. Feb. 19, 2025)....................6–7, 18

*Attkisson v. Holder,*
113 F. Supp. 3d 156 (D.D.C. 2015)....................8, 13, 18

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*,
826 F. Supp. 3d 73 (D.D.C. 2026)....................14

*Donald J. Trump for President, Inc. v. Boockvar*,
No. 2:20-cv-966, 2020 WL 5658392 (W.D. Pa. Sep. 23, 2020)....................14

*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
319 F. Supp. 3d 70, 104 (D.D.C. 2018)....................8–10

*Ellsworth Assocs. Inc. v. United States*,
917 F. Supp. 841 (D.D.C. 1996)....................17

*Food & Water Watch v. Trump*,
357 F. Supp. 3d 1 (D.D.C. 2018)....................6

*Friedman v. Bache Halsey Stuart Shields, Inc.*,
738 F.2d 1336 (D.C. Cir. 1984)....................15–16

*Guttenberg v. Emery*,
26 F. Supp. 3d 88 (D.D.C. 2014)....................8–9, 13

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
608 U.S. 580 (2026)....................7

*Holland v. Cardem Ins. Co.*,
No. 1:19-cv-02362 (TSC/GMH), 2020 WL 9439381 (D.D.C. June 22, 2020)....................7

*Intrepid Automation, Inc. v. 3D Sys. Corp.*,
No. 24-cv-2262-AGS-DDL, 2025 WL 712652 (S.D. Cal. Mar. 5, 2025)....................9

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....7

*Nat. Res. Def. Council v. Pena*,
147 F.3d 1012 (D.C. Cir. 1998)....6

*Navajo Nation Hum. Rts. Comm'n v. San Juan Cnty.*,
No. 2:16-CV-00154 JNP, 2016 WL 3079740 (D. Utah May 31, 2016)....14

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975)....15

*People First of Ala. v. Merrill*,
491 F. Supp. 3d 1076 (N.D. Ala. 2020)....14

*Strike 3 Holdings, LLC v. Doe*,
964 F.3d 1203 (D.C. Cir. 2020)....5, 19

*United States v. Weber Aircraft Corp.*,
465 U.S. 792 (1984)....15–16

*Va. Coal. for Immigrant Rts. v. Beals*,
No. 1:24-cv-1778(PTG/WBP) (E.D. Va. Oct. 21, 2024), ECF No. 72 (Mem. & Order)....14

**Statutes**

5 U.S.C. § 552(a)(4)(A)(i) ....16

5 U.S.C. § 552(a)(4)(E)(i)....16

5 U.S.C. § 552(d)....15

18 U.S.C. § 592....3

18 U.S.C. § 595....3

18 U.S.C. § 598....3

52 U.S.C. § 10307(b)....3, 8

## INTRODUCTION

Defendants' opposition rests on a contradiction. Plaintiffs, Defendants claim, lack standing because they "do not point to any policy or statement that DHS intends to deploy armed federal agents to polling locations." Defendants' Opposition ("Opp.") 12–13. Yet Defendants ask the Court to deny Plaintiffs' means of learning about the contours of any such policy and the government's intended actions concerning federal agents in the vicinity of voting locations. Defendants insist the threat is merely "speculative," *id.* at 13, but they will not say—in a sworn interrogatory answer or a declaration—that government policy prohibits Defendants' agents from operating in the vicinity of voting locations. They will not say that any safeguards protect eligible citizens swept into the "Unlawful Voter Initiative." They will not even produce two DHS directives that have already been described, by date and content, in the public record. That silence is a strong argument for the discovery that Plaintiffs request, especially given the urgency of the ongoing election.

Plaintiffs' limited discovery requests are much more modest than full merits discovery. In total, Plaintiffs seek only six targeted items: (1) sworn answers to two interrogatories, (2) copies of two productions already collected and largely produced in related FOIA litigation, (3) documents for two specifically identified directives, and (4) documents sufficient to show the operative policies governing federal personnel near voting locations, with production of the first three categories within three business days and the final category within five business days. Far from the sweeping merits discovery Defendants describe, Plaintiffs largely seek records that Defendants have already collected, reviewed, and produced elsewhere. Plaintiffs also seek records relating to conduct that would be a crime under federal law and to which some of the Defendants

previously had longstanding policies in place regarding the conduct of federal agents during an active election because their conduct could break federal law and violate voters' rights.

Nothing in Defendants' opposition supplies a reason to wait. Defendants cannot defeat a Rule 26(d) motion by announcing a motion to dismiss they have not filed. The law of this Circuit is clear: The mere possibility of a later-filed motion to dismiss is no basis to deny expedited discovery that otherwise satisfies Rule 26. Nor can Defendants prevail under the reasonableness test, because every factor favors Plaintiffs. *First*, courts in this district routinely grant expedited discovery without pending motions filed. *Second*, Plaintiffs' requests are few and specific, and they are already confined by their terms to the operative materials governing the November 3 election. *Third*, the purpose of the requested discovery is to assess the need for emergency relief and preserve the status quo in an election that has already begun, a purpose two courts in this district have recognized as urgent in the very FOIA cases from which Plaintiffs seek records. *Fourth*, the burden is minimal. *Fifth*, the timing favors Plaintiffs because the ordinary discovery schedule would not begin until after Election Day. Defendants' remaining objections, to the wording of particular requests and to the prospect of asserting privilege, are matters for discovery responses under Rules 33 and 34, not reasons to deny discovery.

Election Day is 18 days away. Early voting is underway across the country, and the Homeland Security Investigations ("HSI") surge that DHS launched under the Unlawful Voter Initiative is ongoing. Once November 3 passes, no order of the Court can allow a do-over for a voter who was intimidated in casting that voter's ballot. Rule 26(d)(1) exists precisely for situations like this. The Court should grant Plaintiffs' motion, as clarified and narrowed below, on the schedule Plaintiffs propose.

## BACKGROUND

Defendants describe the Complaint as "cobbled together" from "news clippings and federal officials' press statements." Opp. 5–6. But the "federal officials" at issue are Defendants themselves. The DHS Secretary, the White House Border Czar, the Attorney General, and the Director of the FBI are each named defendants, and Plaintiffs rely on the statements they made in their official capacities, including at a confirmation hearing, in Senate testimony, and in official press briefings. Compl. ¶¶ 106–13. Section 11(b) prohibits not only completed intimidation but also threats and attempts to intimidate. Public statements by senior government officials are no less actionable. Their public and broadcast nature is precisely what gives them the capacity to intimidate voters at scale. Defendants cannot now plausibly object to Plaintiffs' limited discovery seeking the policies, directives, and operational guidance that would implement those official threats. The questions Plaintiffs seek through discovery are not idle. Congress foreclosed federal forces from interfering with elections long ago. For more than a century and a half, federal law has prohibited any "person in the civil, military, or naval service of the United States" to "order[], bring[], keep[], or ha[ve] under his authority or control any troops or armed men at any place where a general or special election is held, unless such force be necessary to repel armed enemies of the United States." 18 U.S.C. § 592. Section 11(b) of the Voting Rights Act, enacted a century later, extends further protection against intimidation by any person, "whether acting under color of law or otherwise." 52 U.S.C. § 10307(b). Several other federal statutes—some of which specifically apply only to government officials like Defendants, their employees or agents, or individuals using government resources—prohibit voter intimidation and election interference. *See, e.g.*, 18 U.S.C. §§ 595, 598. The guidance DOJ removed from its website, and the protected-area policy DHS rescinded, were internal means by which the Executive Branch kept its own agents within those

bounds. Compl. ¶¶ 101, 163–65. Whether anything has replaced them is precisely what Request No. 3 and Interrogatory No. 1. ask.

Defendants' account also omits other relevant actions they have taken. DHS rescinded a policy that limited immigration enforcement at schools, churches, and other sites that commonly serve as polling places. Compl. ¶ 101. DOJ removed from its website the election-offenses manual that warned against stationing federal agents at polling places. *Id.* ¶¶ 163–65. DHS directed a surge of HSI agents into at least nine states starting in September, relying on data that DHS's own personnel acknowledge will sweep in U.S. citizens and even specifically target naturalized citizens. *Id.* ¶¶ 114–21. And federal agents were reported at or near active voting locations in several states during the 2026 primaries. *Id.* ¶¶ 169, 180, 195, 203. Defendants' argument that the Complaint variously describes this course of conduct as "rhetoric" and as "actions," Opp. 6 n.1, reflects only that the federal law enforcement agencies have engaged in both types of intimidating conduct.

Also telling, the Opposition is accompanied by no declaration from any official, and its omissions only confirm the need for expedited discovery at this key juncture. It glaringly does not represent that there exists a policy either authorizing or prohibiting armed agents to be deployed in the vicinity of voting locations; it does not represent that the two directives described in Request No. 4 do not exist; it does not represent that any safeguards protect eligible voters from the Unlawful Voter Initiative; nor does it represent that compliance with any request would require more than a few days.

## ARGUMENT

### I. Defendants' Potential Unfiled Motion to Dismiss Is Not a Basis to Deny Expedited Discovery.

Defendants' principal argument against limited discovery is that Plaintiffs cannot show a "real and immediate" threat because the Complaint does not cite to a policy or directive to place armed law enforcement at polling locations. Opp. 12–13. Whether such a policy or directive exists is a factual assertion, and the relevant information is uniquely within Defendants' possession. Requests Nos. 3 and 4 and both interrogatories ask the very question Defendants say is dispositive: What have Defendants authorized their agents to do at and near voting locations, and subject to what conditions? Defendants cannot ask the Court to weigh evidence of imminence to deny Plaintiffs' Motion, while simultaneously insisting that Plaintiffs should be denied access to that evidence until any potential jurisdiction question that they may raise is decided. If Defendants intend to argue that no deployment is contemplated, the documents and sworn answers Plaintiffs seek are relevant to the issues before the Court.

Defendants' remaining arguments equally fail. Defendants claim the Court cannot grant "any relief" until Defendants have had "the opportunity to raise their challenges" to standing and jurisdiction. Opp. 11. Defendants are mistaken. First, the D.C. Circuit has rejected Defendants' proposition that expedited discovery must follow a motion to dismiss. In *Strike 3 Holdings, LLC v. Doe*, the D.C. Circuit held that the "mere possibility" that a "defendant may defeat a complaint at a later stage is not a legitimate basis to deny a Rule 26(d)(1) [expedited discovery] motion that otherwise satisfies Rule 26's discovery standards." 964 F.3d 1203, 1211 (D.C. Cir. 2020). Defendants have not met, let alone exceeded, the threshold given the clear and ongoing harms Plaintiffs are experiencing as detailed in the Complaint.

Second, a challenge to standing is a reason to permit discovery, not to deny it. In this Circuit, a court may order discovery to assure itself of standing at the pleadings stage, consistent with "precedent allowing jurisdictional discovery and factfinding if allegations indicate its likely utility." *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1024 (D.C. Cir. 1998). That Defendants have guaranteed they will imminently file a motion to dismiss that "attacks 'the factual basis of the court's jurisdiction'" means that at minimum "jurisdictional discovery is appropriate to assist the Court in resolving issues of fact relevant to standing." *Food & Water Watch v. Trump*, 357 F. Supp. 3d 1, 9 (D.D.C. 2018). Delaying would be the waste of resources of which Defendants complain. *Cf.* Opp. 13–14. Defendants suggest Plaintiffs' members fear federal agents at the polls only because of "news clippings and federal officials' press statements," and their fears are therefore speculative. Opp. 12. But whether Defendants have in fact directed officers or agents to voting locations, and what they have told their officers or agents to do there, is exactly what Requests Nos. 1, 3, and 4 would reveal. Defendants cannot fault Plaintiffs for lacking Defendants' internal documents while refusing to produce them.

Third, even if Defendants had filed a motion to dismiss, the Court may simply permit limited, written expedited discovery to proceed while the parties brief that theoretical motion to dismiss on a prompt schedule. *Am. Fed'n of Lab. and Cong. Indus. Orgs. v. Dep't of Lab.*, No. 25-0339, 2025 WL 556325, at *1–2 (D.D.C. Feb. 19, 2025) [hereinafter "*AFL-CIO*"]. In *AFL-CIO*, as here, the government argued that "no discovery is needed because the issues in this case can be decided on a motion to dismiss." *Id.* at *1. The court disagreed, concluding that "properly-limited, expedited discovery would be appropriate and beneficial" because "one of the core questions" was "whether the defendants even took the actions (or established the policies) that plaintiffs challenge," and the court could not decide that question "without some evidence of defendants'

decisionmaking process." *Id.* The court then set simultaneous schedules for discovery, the motion to dismiss, and the preliminary injunction motion. *Id.* at *2. In short, even if Defendants had filed a motion to dismiss, expedited discovery would nevertheless be warranted here because it would promote judicial efficiency and better enable the Court to adjudicate the merits. The Complaint's allegations adequately establish Plaintiffs' standing because "factual allegations of injury resulting from the [Defendants'] conduct" suffice at the pleading stage. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Discovery will reveal the extent of Plaintiffs' injuries resulting from Defendants' actions.

Defendants' reliance on *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 589 (2026) is inapposite. Opp. 10; *see also id.* at 5. There, the Supreme Court's passing reference to discovery restates the familiar pleading principle that a complaint failing to state a plausible claim does not unlock the doors of discovery. *Hikma*, however, does not address a district court's authority to sequence discovery with other proceedings when time-sensitive rights are at stake. And Defendants have not argued—nor could they—that the Complaint fails to state a Section 11(b) claim.

Fourth, Defendants cite no authority for their demand that "the Court must presume it does not have subject matter jurisdiction over Plaintiffs' claims and allow Defendants the opportunity to fully present these arguments to the Court." Opp. 14. That is not the law. Instead, when it comes to at least jurisdictional discovery, district courts have "broad discretion" and "[t]he weight of the law in this Circuit suggests that the 'standard for permitting jurisdictional discovery is quite liberal,' even when the plaintiff 'has not made out a *prima facie* case of jurisdiction as required by other jurisdictions.'" *Holland v. Cardem Ins. Co.*, No. 1:19-cv-02362 (TSC/GMH), 2020 WL 9439381, at *11 (D.D.C. June 22, 2020) (quoting *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268

F. Supp. 2d 1, 15 (D.D.C. 2003) (collecting cases)). Finally, Defendants' preview of their standing arguments does not bear on whether the Court should grant expedited discovery, and Plaintiffs will answer them fully if and when Defendants properly move for dismissal. However, Defendants' distorted description of Plaintiffs' injuries as "voluntary responses to [] speculative fears" warrants correction. Opp. at 12. Members of Plaintiffs' organizations have already changed how, where, and whether they will vote—*see, e.g.*, Complaint ("Compl.") ¶¶ 193–94, 204, 206, 214–15, 219–21—and Plaintiffs' organizations have already experienced harms to their direct services—*see, e.g.*, *id.* ¶¶ 175, 178, 183–84. These injuries arise from Defendants' ongoing nine-state enforcement surge, *id.* ¶¶ 114–21, Defendants' agents' documented presence at voting locations during the 2026 primaries, *id.* ¶¶ 169, 180, 195, 203, and Defendants' own suggestions that armed agents will interfere with the elections and specific refusals to rule out presence at voting locations, *id.* ¶¶ 103–13. The harms are therefore not speculative; they are already occurring because of Defendants' intimidating conduct. And because Section 11(b) reaches any "threat[]" and "attempt to intimidate," 52 U.S.C. § 10307(b), the injury Plaintiffs allege is the intimidation itself, not some further event that may or may not follow. Whether Defendants' standing arguments have merit is a question for a motion to dismiss, not a basis to deny the limited expedited discovery sought here.

## II. Every Reasonableness Factor Favors Plaintiffs.

As Defendants acknowledge, courts in this district ask whether expedited discovery is reasonable "in light of all of the surrounding circumstances," *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014), guided by five factors that are "inexhaustive," *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 104 (D.D.C. 2018), and to which courts "are not limited," *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015). All five factors favor Plaintiffs.

**A. Expedited Discovery Is Warranted Without Pending Emergency Relief Filed.**

Defendants mistakenly treat a pending preliminary injunction motion as a prerequisite to expedited discovery. Opp. at 15–16. It is not. The reasonableness factors are guidelines, not required elements. *Dunlap*, 319 F. Supp. 3d at 104. Courts in this district have found that the first reasonableness factor favors discovery even when no injunction motion is on file. As one court put it, expedited discovery "may be justified to allow a plaintiff to determine whether to seek an early injunction." *Intrepid Automation, Inc. v. 3D Sys. Corp.*, No. 24-cv-2262-AGS-DDL, 2025 WL 712652, at *2 (S.D. Cal. Mar. 5, 2025) (cleaned up). Here, Plaintiffs' motion expressly stated the requests are narrowly tailored to assess the need to seek emergency relief during the ongoing election. Mot. 6–7.

Defendants' position to the contrary in this context is a Catch-22. If Plaintiffs moved for emergency relief now, without evidence that only Defendants possess, Defendants would argue—as they already do—that Plaintiffs' showing is speculative. Opp. 12–13. If Plaintiffs first seek that evidence, Defendants claim discovery is unavailable because no emergency motion is pending. *Id.* at 15–16. The reasonableness standard exists to prevent this kind of circularity.

Defendants' other objection under this factor—that Plaintiffs seek "merits discovery"—is equally unavailing. Opp. at 5, 14, 18. Defendants misread *Guttenberg*. The court in *Guttenberg* denied expedited discovery that was "not narrowly tailored to reveal information related to the preliminary injunction as opposed to the case as a whole," or that would "substantially advance plantiffs' claim on the merits" beyond what interim relief requires. *Guttenberg*, 26 F. Supp. 3d at 98. The plaintiff there sought discovery to reach all information proving breach of a contract, as well as "the extent of damages," *id.*, questions that skip ahead to liability and damages that would be relevant only after a finding of such liability. Discovery of that kind clearly reaches into the

domain of ordinary fact discovery and beyond the discovery necessary for emergency, interim relief.

Not so here, where Plaintiffs' motion seeks narrowly tailored answers to questions properly directed to whether emergency injunctive relief is necessary in the days or weeks leading up to the election rather than all information regarding Defendants' liability under Section 11(b). Under Defendants' misreading, improper discovery as to the "merits" would reach any fact bearing on Plaintiffs' claim. On that reading, it is difficult to see what expedited discovery could ever be permitted, given that a preliminary injunction motion, for example, requires a showing of likely success on the merits, and any discovery useful to that showing would be foreclosed "merits discovery" by Defendants' definition.

To remove any doubt about the purpose of the limited expedited discovery requested, if Defendants substantively produce and identify responsive materials, Plaintiffs agree to provide notice of the emergency relief they seek and propose a briefing schedule within three business days of the substantive production. Expedited discovery tethered to a date-certain motion for emergency relief is the paradigmatic case for authorizing expedited discovery in this context. *Dunlap* is not to the contrary. The court there declined to authorize a subpoena because an injunction was already in place, and enforcement of that injunction would secure the documents at issue. 319 F. Supp. 3d at 105–06. No other order here requires Defendants to disclose anything, and there is no other procedural mechanism to bring these materials to light during ongoing early voting or on Election Day, November 3.

### B. The Requests Are Narrow.

Plaintiffs' limited discovery includes only four requests for production and two interrogatories. Defendants respond by dividing single sentences into "discrete subparts" and by

objecting to the definition of "You." Opp. 20–24. Neither objection has merit: Rule 34 contains no numerical limit and no subpart rule. Rule 33(a)(1) limits a party to twenty-five interrogatories, "including all discrete subparts," to police the number of interrogatories served. Plaintiffs served two. A question directed to a single subject is a single interrogatory even if it seeks related details. *See* Fed. R. Civ. P. 33 advisory committee's note to 1993 amendment. "Policies, training materials, or criteria[,]" Compl. Ex. B at 2, used to avoid intimidating voters is one subject. Defendants' excessive brackets divide a sentence into nine pieces. Opp. 21. Their artificial splitting does not, however, make the request broader.

Nor do the definitions of "Defendants" and "You" "expand[] the scope of discovery." Opp. at 21. HSI, U.S. Customs and Border Protection, U.S. Citizenship and Immigration Services, and Federal Protective Service are components of DHS, a named Defendant. The Civil Rights and Criminal Divisions are components of DOJ, also a named Defendant. A party must produce documents within its "possession, custody, or control," Fed. R. Civ. P. 34(a)(1), and an agency's records include those of its components. Defendants identify no component that lacks relevant information, and they could not. The definition also tracks the components to which the *DNC* requests were directed and which have already processed the records at issue.

Defendants try to frame Request No. 3 as a single run-on demand. Opp. 21. The nine purported "subparts" Defendants count in Request No. 3, Opp. at 21, are illustrations of that single subject, most of them introduced by the words "including, but not limited to." Nevertheless, to eliminate any ambiguity, Plaintiffs confirm that Request No. 3 only seeks (1) documents sufficient to show any final actual or anticipated threat assessments concerning voting locations for the 2026 General Election as defined in the requests and (2) documents sufficient to show any policy or policies currently governing whether and when Defendants may be present at, enter, or conduct

operations in the vicinity of voting locations as defined in the requests, including any document or agency formal or informal direction that superseded the polling-place guidance in DOJ's 2017 manual or DHS's rescinded protected-areas policy.

Request No. 4, for its part, seeks documents sufficient to show only two publicly reported and identified DHS policies or directives and anything that supplements and supersedes them. Defendants do not deny that these policies or directives exist or claim that they cannot be retrieved quickly. A request for documents sufficient to show two identified policies or directives revealed in public reporting is neither "speculative" nor "overbroad."

Defendants' objection that the interrogatories are "speculative" and that they lack a time period is equally unavailing. Opp. 23–24. The interrogatories ask Defendants to identify policies, training materials, and criteria that exist or that Defendants have adopted for the ongoing 2026 General Election. Defendants either have such policies and safeguards or they do not. And the interrogatories are temporally bounded: Interrogatory No. 1 is expressly limited to "the upcoming November 2026 elections," and Interrogatory No. 2 to "voting periods." To remove any doubt, Plaintiffs confirm that both interrogatories seek only materials, policies, and criteria in effect now or adopted for the November 3, 2026 General Election and its associated early voting, canvass, and certification periods. Plaintiffs do not seek drafts or superseded materials. Each can be answered by a knowledgeable agency official in a sworn paragraph. Defendants' remaining objections—that the requests "may be privileged," are "speculative," and would be "overly time consuming and costly" to produce, Opp. 22–24 are boilerplate. Defendants identify no privileged document and no burdensome search.

### C. The Purpose Is to Determine the Scope and Necessity of Emergency Relief.

Defendants repeatedly quote Plaintiffs' statements that the requests seek information "central" to Plaintiffs' claim. *See* Opp. 7, 21, 24. The purpose factor asks not whether discovery touches the merits, but whether it serves an urgent and legitimate need that ordinary discovery cannot meet. *See Guttenberg*, 26 F. Supp. 3d at 98. This is readily satisfied here. Under Plaintiffs' Section 11(b) claim seeking prospective relief, the facts that determine the scope and necessity of emergency relief—whether Defendants have authorized federal agents at voting locations during the ongoing election through Election Day and as defined in the discovery requests, under what circumstances, to what geographic extent, and with what safeguards—are facts relevant to the claim.

Defendants' own authorities underscore this point because they concern different circumstances, not relevant to potential preliminary relief. The plaintiffs in *Guttenberg* sought depositions to prove a contract claim and to "fend off" a pending motion to dismiss. *Id.* at 98–99. The plaintiffs in *Attkisson* sought broad discovery into alleged government surveillance that had occurred years earlier. 113 F. Supp. 3d at 163–64. Plaintiffs here, by contrast, seek information relevant to what Defendants plan to do during the 2026 General Election. The discovery is directed to prospective conduct that can still be prevented, not to liability for completed acts. And the purpose factor favors expedited discovery when a plaintiff seeks to "gain evidence to get the court to preserve the status quo." *Attkisson*, 113 F. Supp. 3d at 164 (internal quotation marks and citation omitted).

That is the purpose here—that is, to determine the scope, extent, and necessity of emergency equitable relief, Mot. 7—and the election timeline is what makes it urgent. Early voting, for example, began in Minnesota on September 18, 2026, and in Ohio on October 6, 2026;

and Election Day is November 3.[1] The courts in both FOIA cases from which Plaintiffs seek records treated that calendar as the reason for speed. *See Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 826 F. Supp. 3d 73, 87 (concluding that "[b]ecause the election cycle is inherently time-limited," delay would compromise the public's interest in understanding the government's conduct "before the upcoming elections pass by") [hereinafter "*CREW*"*]*; Min. Order, *Democratic Nat'l Comm. v. U.S. Dep't of Just.*, No. 1:26-cv-00825 (D.D.C. Aug. 22, 2026) (rejecting a processing timeline that would run past the midterms as "an unacceptable delay given the proximity of the 2026 midterm elections") [hereinafter "*DNC*"]. Courts frequently permit expedited discovery because of the urgency in election law cases with an election deadline looming. *See, e.g.*, *Ala. Coal. for Immigrant Just. v. State*, No. 2:24-cv-1254-AMM, 2024 WL 7158360, at *4 (N.D. Ala. Oct. 1, 2024); *Va. Coal. for Immigrant Rts. v. Beals*, No. 1:24-cv-1778 (PTG/WBP), at 1–2 (E.D. Va. Oct. 21, 2024), ECF No. 72 (Mem. & Order); *People First of Ala. v. Merrill*, 491 F. Supp. 3d 1076, 1143 (N.D. Ala. 2020); *see also Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-cv-966, 2020 WL 5658392, at *2 (W.D. Pa. Sep. 23, 2020) (ordering expedited discovery after lifting stay); *Navajo Nation Hum. Rts. Comm'n v. San Juan Cnty.*, No. 2:16-cv-00154 JNP, 2016 WL 3079740, at *2 (D. Utah May 31, 2016) (magistrate judge order vacated as moot after district judge ordered discovery)."

As explained above, the discovery will also serve the Court. If emergency relief becomes necessary, it must be drawn to relieve and prevent the harm shown. Knowing what Defendants'

[1] As of this filing, early in-person voting has started in the following states: Arizona, California , Georgia, Guam, Idaho, Illinois, Indiana, Iowa, Kansas, Maine, Minnesota, Montana, Nebraska, New Mexico, North Carolina, Ohio, Pennsylvania, Rhode Island, South Dakota, Tennessee, Vermont, Virginia, and Wyoming. *Early In-Person Voting*, National Conference of State Legislatures (Aug. 11, 2026), https://www.ncsl.org/elections-and-campaigns/early-in-person-voting (cataloguing early in-person start dates by state).

operative policies are, and what they actually provide or omit, would assist the Court in crafting an order that effectively restrains unlawful conduct.

Defendants claim instead that Plaintiffs' "actual purpose" for Request Nos. 1 and 2 is to "circumvent the FOIA," that Plaintiffs should "comply with the process for requesting records from federal agencies," and that they should pay FOIA fees. Opp. 18–20. This argument is baseless and unsupported by the law. The argument conflates two independent legal regimes. FOIA governs requests by members of the public for agency records, and by its terms it "does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section." 5 U.S.C. § 552(d). Rule 34, by contrast, governs requests by a party to litigation for documents in an opposing party's possession. Because the two regimes are independent, nothing in either requires a civil litigant to use FOIA instead of discovery. As the D.C. Circuit has made clear, "[s]tatutes insulating information from publication are aimed at the broadcasting of sensitive information to the general populace; the statutes are not intended to enjoin the limited kind of disclosure encountered in judicial proceedings." *See Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1344 (D.C. Cir. 1984). A requester's rights under FOIA are "neither increased nor decreased" by its status as a litigant. *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 143 n.10 (1975). The converse is equally true: The availability of a record under FOIA does not remove it from the scope of Rule 26. FOIA was not intended to supplement or displace the federal rules of discovery, *see United States v. Weber Aircraft Corp.*, 465 U.S. 792, 801–02 (1984), and it does not restrict them either. Plaintiffs do not invoke FOIA. They invoke Rules 26, 33, and 34 in a case properly before the Court.

Defendants fail to cite a single authority to the contrary. The records sought in Requests Nos. 1 and 2 are discoverable for the reason any document is discoverable: They are relevant to

the claim and proportional to the needs of the case. That they were also the subject of FOIA requests matters only because it means Defendants have already found, collected, and reviewed them, which bears on burden, not on discoverability.

As Defendants note, Requests Nos. 1 and 2 reach records that were withheld under FOIA, not only records that were released. Opp. 19–20. That is deliberate. Withholding under a FOIA exemption is not a claim of privilege. If Defendants believe particular documents are privileged in this litigation, the federal rules instruct them to provide a log that describes the document and the privilege claimed. Fed. R. Civ. P. 26(b)(5)(A). Indeed, "FOIA acts as a 'floor'" when civil litigants seek documents from the Government, such that "information unavailable under the FOIA is not necessarily unavailable through discovery." *Friedman*, 738 F.2d at 1344. Defendants already have *Vaughn* indices for the withheld records; adapting them is not a heavy burden. And if any record raises genuine law-enforcement or other sensitivities that Defendants properly invoke and substantiate as a privilege, Rule 26(c) permits the Court to enter an appropriate protective order.

FOIA's fee-shifting provisions are likewise beside the point. Processing fees and fee-shifting under 5 U.S.C. § 552(a)(4)(A)(i) and (a)(4)(E)(i) govern FOIA requests and FOIA litigation. Rule 26 governs civil discovery, under which the responding party presumptively bears the cost of responding. So too with FOIA's exemptions. The exemptions define what an agency must release to the public, whereas discovery privileges define what a party must produce to a litigant, subject to potential protective orders. The inquiries are distinct. *See Weber Aircraft*, 465 U.S. at 801–02.

Defendants' footnote 5, which asks why Plaintiffs did not simply obtain the productions from the *DNC* and *CREW* plaintiffs, Opp. 19 n.5, concedes that the records are readily available and that producing them would impose minimal burden, if any, on Defendants. It also misses why

the source matters: Records relayed by third parties carry no representations by Defendants that they are complete, authentic, or current, and Plaintiffs are entitled to Defendants' own production for use in this litigation. In any event, to eliminate any remaining objection, Plaintiffs narrow Requests Nos. 1 and 2 to (1) records Defendants have already produced or released, in whole or in part, in the *DNC* and *CREW* litigation, in the form produced, (2) any *Vaughn* index or withholding log served in those cases, and (3) excluding any unannotated press clippings that reportedly accounted for voluminous parts of the production but would not be responsive to Plaintiffs' requests. So narrowed, the requests require Defendants to do nothing more than copy existing productions of responsive documents with relevant Bates stamping. Plaintiffs reserve the right to seek withheld records in the ordinary course of discovery.

**D. The Burden on Defendants Is Minimal.**

Defendants claim the burden of compliance is "very high." Opp. 24. Defendants fail to carry their burden because they offer no declaration, no page count, no estimate of hours, and no description of what remains to be done. *See Ellsworth Assocs. Inc. v. United States*, 917 F. Supp. 841, 845 (D.D.C. 1996) ("A party opposing discovery bears the burden of showing why discovery should be denied."). What Defendants offer instead is a generic list of discovery tasks: "identify custodians; search potentially responsive repositories; collect and deduplicate records; review for responsiveness, privilege," and so on, Opp. 25, that describes discovery in the abstract and ignores the record in this case. Rule 26(b)(1) expressly directs attention to "the parties' relative access to relevant information," a consideration here that weighs entirely in Plaintiffs' favor.

Rule 26(b)(1)'s proportionality factors point the same way. Those factors direct courts to consider "relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery

outweighs its likely benefit." The issue at stake is voters' ability to participate in a federal election. Defendants hold relevant information otherwise unavailable to Plaintiffs. Defendants include the nation's largest law enforcement agencies and command substantial legal and material resources. And the discovery goes to a key question of imminence. Against all that, Defendants offer only an unquantified assertion of inconvenience.

The actual burden is slight. The *DNC* and *CREW* components have already identified custodians, searched repositories, collected and deduplicated records, and reviewed them. Ten of eleven *DNC* components finished by October 1, 2026; the Department of Justice finished *CREW* in June. Mot. 4. Defendants concede as much, arguing only that "further review" is needed. Opp. 25. In short, Defendants lack any evidence to support their purported burden.

Further, as discussed, the remaining requests are narrow. Request No. 3 seeks documents sufficient to show current policy. Request No. 4 seeks documents sufficient to show two already-identified policies and directives that Defendants do not dispute exist. The two interrogatories call for sworn answers about policies Defendants either have or do not have. "When the burden is low, such as responding to only one or a few discovery requests, then this factor supports granting the motion." *Attkisson*, 113 F. Supp. 3d at 165.

Defendants' final point, that consolidation with *LULAC* and *DSCC* would make the burden "tremendous," Opp. 26, cuts the other way. If the three cases are consolidated, the same records would likely be relevant to all three, and a single coordinated production would be less burdensome than three uncoordinated productions.

**E. The Timing Does Not Weigh Against Plaintiffs.**

Finally, the fifth factor, for which courts consider "how long before the normal discovery process the motion comes," *Attkisson*, 113 F. Supp. 3d at 165, is not dispositive. *AFL-CIO v. Dep't*

*of Lab.*, 349 F.R.D. 243, 253 (D.D.C. 2025) (concluding that, while timing presented "a close question, the Court cannot say reasonableness demands prohibiting expedited discovery"). And other timing features demonstrate the reasonableness of Plaintiffs' request for expedited discovery. Specifically, in this case, following the normal discovery process would mean Plaintiffs get nothing before the election. Mot. 4–5. Defendants have sixty days from service to respond to the Complaint, Fed. R. Civ. P. 12(a)(2), which places their deadline on or about November 17, 2026—two weeks after Election Day. A Rule 26(f) conference and the start of discovery would come later still. At bottom, expedited discovery is necessary in light of the election timeline. It is now or never.

As discussed above, Defendants' anticipated motion to dismiss does not foreclose discovery and in fact supports at least expedited jurisdictional discovery. Regardless, the mere possibility of dismissal does not provide a legitimate basis to deny expedited discovery. *See Strike 3*, 964 F.3d at 1211. As the court in *AFL-CIO* demonstrated, the Court may set expedited discovery and motion-to-dismiss briefing on parallel tracks. 2025 WL 556325, at *2.

Defendants' accusation that Plaintiffs "waited until mid-September 2026 to file this case," Opp. at 17, misreads the Complaint. Plaintiffs filed before the beginning of in-person voting, within three weeks of the September 1 HSI surge, five days after Defendant Homan announced that "there is no sensitive location policy," and three days after Defendant Patel declined before the Senate to rule out federal agents at the polls. Compl. ¶¶ 112–13, 117. Plaintiffs moved for discovery seventeen days later, after conferring with Defendants as Local Civil Rule 7(m) requires. That is diligence, not delay.

### III. The Court Should Order Production on a Short and Certain Schedule.

Plaintiffs respectfully request a proposed modification of the initially proposed production schedule. Plaintiffs request the Court order Defendants, within three business days of the Court's order, to serve sworn answers to Interrogatories Nos. 1 and 2 and to produce documents responsive to Request No. 4 and to narrowed Request Nos. 1 and 2. Given the compressed election timeframe, Plaintiffs further request that, in any event, such production occur no later than October 23, 2026, so that the requested discovery may be meaningfully used in advance of Election Day. Plaintiffs also request Defendants produce documents sufficient to show materials described in Request No. 3 as clarified, within five business days of the Court's order or no later than October 26, 2026. Plaintiffs further request entry of a protective order, if needed, permitting attorneys'-eyes-only designations of operationally sensitive material to the extent the Court deems it appropriate.

The narrowed versions of Requests Nos. 1 and 2 require only the transmission of productions already made with new Bates stamps. Request No. 4 seeks documents sufficient to show two already-identified policies and directives. The interrogatories, as clarified, call for sworn identification of operative policies that any agency official should be able to provide promptly. Request No. 3, which may require modestly more effort, is given the longer period. Defendants have not suggested, let alone shown through a declaration, that any of these deadlines are unattainable.

## CONCLUSION

Defendants have told the public that their agents "will be where we need to be." Compl. ¶ 110. They have told the Court only that Plaintiffs cannot prove what that means. The Federal Rules do not require voters to guess, and Section 11(b) does not wait to protect voters from intimidation until they go to the ballot box. Accordingly, Plaintiffs respectfully request the Court

grant Plaintiffs' Motion, as clarified and narrowed herein, and order the production schedule set out above.

Dated: October 16, 2026

Respectfully submitted,

*/s/ I. Sara Rohani*

I. Sara Rohani (DC Bar No. 1781155)
Hayley Hahn** (DC Bar No. 90045921)
Victor Olofin*** (DC Bar No. 90030772)
NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.
Tel: (202) 682-1300
700 14th Street NW, Ste. 600
Washington, DC 20005
srohani@naacpldf.org

John S. Cusick*
Brittany Carter***
NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006

Miranda Galindo***
Rex Chen***
LATINOJUSTICE PRLDEF
475 Riverside Drive, #1901
New York, NY 10115

Kristen M. Clarke (DC Bar No. 973885)
Anthony P. Ashton (D.D.C. Bar No. MD25220)
Max L. Meyers***
NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE
4805 Mt. Hope Dr.
Baltimore, MD 21215

Leah Wong***
Jane Shim***
Charles Jiang***
Patrick Stegemoeller***
Dinesh McCoy***
Niji Jain***
ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND
99 Hudson Street, 12th Floor
New York, NY 10013

Jessica A. Marsden*
PROTECT DEMOCRACY PROJECT
101 Glen Lennox, Suite 300
Chapel Hill, NC 27517

Benjamin R. Farley (DC Bar No. 90042585)
Imani Franklin (DC Bar No. 90006160)
NATIONAL IMMIGRATION LAW CENTER
PO Box 34573
Washington, DC 20043

*Counsel for Plaintiffs NAACP, MFA, OCA, NUL, and MN8*

Jasleen K. Singh*
Patrick Berry*
BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271

Hayne Yoon*
BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW
777 6th St. NW, Suite 1100
Washington, DC 20001

*Counsel for Plaintiff SEIU*

Norman L. Eisen (DC Bar No. 435051)
Pooja Chaudhuri (DC Bar No. 888314523)
Sofia Fernandez Gold (DC Bar No. 90010196)
Harold Craig Becker (DC Bar No. 371239)
Tianna Mays (DC Bar No. 90005882)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003

*Counsel for Plaintiffs AFT, UFCW, and IUPAT*

* *Admitted pro hac vice*
** *Admission to D.D.C. pending*
*** *Pro hac vice application forthcoming*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

*/s/ I. Sara Rohani*
I. Sara Rohani
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
700 14th Street NW, Ste. 600
Washington, DC 20005