**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>*Defendants*. | Civil Action No. 26 - 3263 (LLA) |

**ORDER**

On September 18, 2026, Plaintiffs NAACP, Mi Familia en Acción, OCA-Asian Pacific American Advocates, National Urban League, MN8, Service Employees International Union, American Federation of Teachers, United Food and Commercial Workers International Union, and International Union of Painters and Allied Trades filed their complaint. ECF No. 1. On October 5, Plaintiffs moved for expedited discovery under Federal Rule of Civil Procedure 26(d)(1). ECF No. 33. Three days later, the court directed Defendants—U.S. Department of Homeland Security ("DHS"), DHS Secretary Markwayne Mullin, U.S. Immigration and Customs Enforcement ("ICE"), Acting ICE Director David Venturella, U.S. Department of Justice ("DOJ"), Attorney General Todd Blanche, the Federal Bureau of Investigation ("FBI"), FBI Director Kash Patel, and White House Executive Associate Director of Enforcement and Removal Operations Thomas Homan—to respond to the motion by October 13, and Plaintiffs to file their reply by October 16. Oct. 8, 2026 Minute Order. The motion is now ripe. ECF Nos. 34, 36. For the following reasons, the court grants the motion in part.

Typically, a party may not request discovery until after the parties' Rule 26(f) conference. Fed. R. Civ. P. 26(d)(1). However, in "rare" circumstances, a court may exercise its discretion under Rule 26(d)(1) to permit "limited," expedited discovery. *Attkisson v. Holder*, 113 F. Supp. 3d 156, 161 (D.D.C. 2015) (quoting *Landwehr v. Fed. Deposit Ins. Corp.*, 282 F.R.D. 1, 3 (D.D.C. 2010)). Courts in this district evaluate such requests under a five-factor reasonableness test. *Does 1-9 v. Dep't of Just.*, No. 25-CV-325, 2025 WL 894120, at *4 (D.D.C. Mar. 22, 2025). The factors, which are considered "in light of all of the surrounding circumstances," are: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Dep't of Lab.* ("*AFL-CIO*"), 349 F.R.D. 243, 248 (D.D.C. 2025) (quoting *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014)). These factors are nevertheless "only guidelines" for the court's exercise of its broad discretion over discovery. *Id.* (quoting *Guttenberg*, 26 F. Supp. 3d at 98).

Plaintiffs make six requests for expedited discovery—four requests for production and two interrogatories. ECF Nos. 33-1, 33-2.[1] Specifically, they ask for the following documents:

> **Request No. 1:** All Documents that any Defendant has Identified as Responsive to the [*Democratic National Committee v. U.S. Department of Justice* (*DNC*), No. 26-CV-825,] [Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,] Requests, together with any *Vaughn* index, draft *Vaughn* index, or other written description of withheld Documents prepared in that case.
>
> **Request No. 2:** All Documents that DOJ has Identified as Responsive to the [*Citizens for Responsibility & Ethics in Washington v. U.S. Department of Justice*, No. 25-CV-4426,] FOIA

[1] When citing ECF Nos. 33-1 and 33-2, the court refers to the CM/ECF-generated numbers at the top of each page rather than any internal pagination.

> Requests, together with any *Vaughn* index, draft *Vaughn* index, or other written description of withheld Documents prepared in that case, and that concern (a) DOJ's use of DHS's Systematic Alien Verification for Entitlements (SAVE) system, or any other DHS data system, to verify the citizenship of voters or voter registrants; (b) any plan or practice to compile, aggregate, match, link, or otherwise combine voter data obtained from state or local election officials with data held by DHS or any other federal agency; or (c) the referral of any voter or voter registrant to any Defendant for investigation, prosecution, or removal.
>
> **Request No. 3:** All Documents pertaining to any assessment, analysis, or determination regarding actual or anticipated threats relating to or during the 2026 General Election in the vicinity of a Voting Location, including, but not limited to, a polling location, drop box, or election office, at the time of Your response that governs whether and under what circumstances Your personnel may be present at, enter, or conduct operations in the vicinity of a Voting Location during the 2026 General Election, including any Document that rescinds, suspends, supersedes, or replaces (a) the guidance on polling-place activity in the December 2017 edition of DOJ's *Federal Prosecution of Election Offenses* manual, or (b) the DHS protected-areas policy rescinded on or about January 20, 2025.
>
> **Request No. 4:** The following Documents, together with any Document that supplements or supersedes either of them: (a) the internal DHS guidance, reported by CNN on August 31, 2026, directing Homeland Security Investigations to expand elections-related investigations in at least nine states between early September and mid-October 2026, *see* [ECF No. 1] ¶ 117; and (b) the 2026 DHS memorandum or directive instructing Homeland Security Investigations to coordinate with U.S. Citizenship and Immigration Services in identifying, investigating, or referring for prosecution individuals believed to have registered or voted while not U.S. citizens, including all Documents that comprise or otherwise communicate this memorandum or directive, *see* [*id.*] ¶¶ 114-15, 118, 121.

ECF No. 33-1, at 2-3. They also request answers to the following interrogatories:

> **Interrogatory No. 1:** Identify all policies, training materials, or criteria Defendants use, have used, or plan to use to avoid conducting operations, including within, at, or in proximity to Voting Locations, that would risk violating federal and state prohibitions on voter intimidation, including under 52 U.S.C.

> § 10307(b) and 18 U.S.C. § 592, for the upcoming November 2026 elections.
>
> **Interrogatory No. 2:** Identify all policies, training materials, or criteria Defendants use, have used, or plan to use to ensure their investigations do not inadvertently or unlawfully target or otherwise intimidate, coerce, or threaten U.S. citizens during voting periods, including naturalized citizens, citizens who live in mixed immigration status households, derivative citizens, and U.S. citizens who petitioned for spousal citizenship.

ECF No. 33-2, at 2. The court concludes that the first, third, and fourth requests for production are reasonable under the circumstances of this case.

On the first factor—whether a motion for a preliminary injunction is pending—the court finds that the factor weighs slightly in Plaintiffs' favor as to all requests. Even where "a motion for a preliminary injunction is not yet pending," this factor can still weigh in a plaintiff's favor if "the very purpose of [the] motion for expedited discovery is to support [the plaintiff's] anticipated motion for a preliminary injunction." *Legal Tech. Grp., Inc. v. Mukerji*, No. 17-CV-631, 2017 WL 7279398, at *3 (D.D.C. June 5, 2017). In *Mukerji*, the court relied on the plaintiff's representation in its motion for expedited discovery that it "anticipate[d] filing [a motion for preliminary injunction] promptly at the conclusion of . . . expedited discovery." *Id.* (internal quotation marks omitted); *see AFL-CIO*, 349 F.R.D. at 249 (finding that the first factor "weigh[ed] somewhat in favor of granting plaintiffs' motion for expedited discovery" where the plaintiffs "intend[ed] to file a preliminary injunction motion imminently"). Here, Plaintiffs have indicated that they "are carefully evaluating the possibility and necessity of seeking a preliminary injunction and respectfully request this limited, expedited discovery so that they can [make that] assess[ment]." ECF No. 33, at 5-6. In their reply brief, Plaintiffs clarify that "if Defendants substantively produce and identify responsive materials," they will "provide notice of the emergency relief they seek and propose a briefing schedule within three business days of the

substantive production." ECF No. 36, at 10. These representations are sufficient to tip the first factor slightly in Plaintiffs' favor. *See Mukerji*, 2017 WL 7279398, at *3.

Courts often address the second factor—breadth—and the third factor—purpose—together. *See, e.g.*, *Does*, 2025 WL 894120 at *8. Starting with purpose, the court finds that this factor weighs in Plaintiffs' favor as to all requests. In situations where a plaintiff seeks expedited discovery for an anticipated preliminary injunction motion, courts examine whether the plaintiff's "purpose is to 'reveal information related to the preliminary injunction as opposed to the case as a whole.'" *AFL-CIO*, 349 F.R.D. at 250 (quoting *Guttenberg*, 26 F. Supp. 3d at 98). This is true when plaintiffs "focus their discovery requests on the dispositive preliminary injunction issue of irreparable harm." *Id.*; *see Does*, 2025 WL 894120, at *8. Here, Plaintiffs' concerns about "imminent harm" are the impetus for their motion for expedited discovery. ECF No. 33, at 5; *see* ECF No. 36, at 14-15. Thus, to the extent that Plaintiffs' requests are directed to the unearthing of facts bearing on that showing, this factor supports expedited discovery.[2]

As to the second factor—breadth—the court concludes that this factor weighs in Plaintiffs' favor only as to their first, third, and fourth requests for production. Because Plaintiffs intend to use the expedited discovery for their anticipated preliminary injunction motion, "the scope of

---

[2] Defendants contend that Plaintiffs' "actual purpose" is to "circumvent FOIA," at least with respect to Plaintiffs' first and second requests for production. ECF No. 34, at 15, 19. Curiously, right before speculating about this "actual purpose," Defendants acknowledge that courts "assess[] the *stated* purpose of a plaintiff['s] motion" for expedited discovery. *Id.* at 18-19 (emphasis added). In any event, Defendants' argument is beside the point. FOIA "is fundamentally designed to inform the public about agency action and not to benefit private litigants." *Nat'l Lab. Rels. Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n.10 (1975). Although Plaintiffs could have made FOIA requests to Defendants identical to those in the cases they reference, they were under no obligation to do so. The court sees Plaintiffs' first and second requests for production as nothing more than attempts to leverage convenient parameters for identifying documents in Defendants' possession that have already been produced.

[their] discovery request[s] [must be] tailored to determining the contours of [Defendants'] actions that are necessary for deciding a preliminary injunction motion, primarily irreparable harm." *AFL-CIO*, 349 F.R.D. at 251. The court determines that, as written, only the first, third, and fourth requests for production achieve that. These requests relate to Defendants' plans for further deployment of criminal and immigration law enforcement at polling locations for 2026 elections and thus implicate Plaintiffs' theory of irreparable harm—that federal agents will intimidate Plaintiffs' members and otherwise impede their exercise of their voting rights. *See* ECF No. 1 ¶ 234; ECF No. 33, at 3-5, ECF No. 36, at 2, 8, 20. Accordingly, the court concludes that the three requests are properly scoped. *See Does*, 2025 WL 894120, at *6, *8 (approving a request for production related to "the Government's intent for any potential future [legal violation]"); *AFL-CIO*, 349 F.R.D. at 251 (similar).

Plaintiffs' second request for production and two interrogatories are not properly scoped. The second request for production appears to be more closely related to the merits of the case than it is to Plaintiffs' theory of irreparable harm. Knowing the extent of Defendants' efforts to collect voter information from state election officials, while presumably relevant to Plaintiffs' legal theories, will not reveal much, if anything, about the presence of federal law enforcement at polling locations between now and Election Day. Indeed, the underlying FOIA requests were partially aimed at deciphering the agencies' "legal basis" for retrieving the voter information, ECF No. 33-1, at 40, which is beyond the scope of Plaintiffs' factual irreparable harm showing, *see Does*, 2025 WL 894120, at *8 (disapproving interrogatories that sought "legal conclusions rather

than factual discovery").[3] Plaintiffs' interrogatories are similarly overbroad, in that Plaintiffs also seem to request legal conclusions. *See* ECF No. 33-2, at 2; *see also Does*, 2025 WL 894120, at *8; *Hemp Indus. Ass'n v. U.S. Drug Enf't Admin.*, No. 20-CV-2921, 2020 WL 12918344, at *1-2 (D.D.C. Dec. 15, 2020) (concluding that "interrogatories . . . seek[ing] 'pure legal conclusions'" are "impermissible," especially when the defendant has not yet responded to the complaint). The first interrogatory would require Defendants to reveal their theory of "voter intimidation . . . under 52 U.S.C. § 10307(b) and 18 U.S.C. § 592," among other federal and state laws, and the second interrogatory asks for Defendants' position on what constitutes "inadvertent[] or *unlawful*[] target[ing] . . . [,] intimidat[ion], coerc[ion], or threat[s] [to] U.S. citizens" at polling locations. ECF No. 33-2, at 2 (emphasis added). Accordingly, the court will limit any expedited discovery it orders to Plaintiffs' first, third, and fourth requests for production.

As to the fourth factor—burden—the court finds that, after winnowing the discovery requests, the factor weighs in Plaintiffs' favor. Any expedited "discovery request[] [will] of course impose some burden on Defendants." *Does*, 2025 WL 894120, at *9. "But '[w]hen the burden is low, such as responding to only one or a few discovery requests, then this factor supports granting the motion for expedited discovery.'" *Id.* (alteration in original) (quoting *Attkisson*, 113 F. Supp. 3d at 165). Plaintiffs' first request for production will not unduly burden Defendants because the documents have already been identified as part of the underlying FOIA requests in *DNC*, No. 26-CV-825. Plaintiffs' fourth request seeks documents related to two DHS directives that

[3] While part of Plaintiffs' second request asks for documents concerning "the referral of any voter or voter registrant to any Defendant for investigation, prosecution, or removal," ECF No. 33-1, at 2, that information does not appear to have been sought by the underlying FOIA requests, *see generally id.* at 39-51. Additionally, although Plaintiffs inquire about Defendants "use of" the data, *id.* at 2, "a 'use' of the [data] could mean almost anything" and is thus too broad, *Does*, 2025 WL 894120, at *6.

Plaintiffs have identified in their complaint; this request, too, thus has little chance of unduly burdening Defendants. *See AFL-CIO*, 349 F.R.D. at 253 (finding that requests "limited to documents referenced" in litigation materials were not "overly burdensome"). The court recognizes that Plaintiffs' third request asks Defendants to search for responsive materials on the condensed timeline that the impending elections demand.[4] But the court nonetheless concludes that the expected overlap among the three remaining requests for production and the court's plan to stagger the deadlines, as proposed by Plaintiffs, *see* ECF No. 36, at 20, will mitigate any outsized burden.

Finally, as to the fifth factor—the litigation posture—the court concludes that this factor, on balance, favors Plaintiffs. To be sure, Plaintiffs' "request for expedited discovery comes 'well in advance of typical discovery,'" as Defendants' deadline to respond to the complaint is weeks away. *Guttenberg*, 26 F. Supp. 3d at 99 (quoting *Landwehr*, 282 F.R.D. at 4). On its own, that fact would benefit Defendants. At the same time, while Defendants anticipate filing a motion to dismiss, ECF No. 34, at 11, they have not yet done so. While courts have observed that a "*pending* motion to dismiss cuts against granting a plaintiff's motion for expedited discovery," *AFL-CIO*, 349 F.R.D. at 253 (emphasis added); *see Attkisson*, 113 F. Supp. 3d at 165 (observing that resolving a motion for expedited discovery before a pending motion to dismiss "is often disfavored"), courts have also concluded that the fifth factor "does not weigh strongly in [a] defendant['s] favor" when that motion is merely forthcoming, *AFL-CIO*, 349 F.R.D. at 253; *cf. Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1211 (D.C. Cir. 2020) ("[T]he mere possibility that

[4] In this respect, the "inherently time-limited nature of the election cycle distinguishes this case from others," *Citizens for Resp & Ethics in Wash. v. U.S. Dep't of Just.*, 826 F. Supp. 3d 73, 89 (D.D.C. 2026), in which courts have found that expedited discovery would pose an undue burden.

[a] defendant may defeat a complaint at a later stage is not a legitimate basis to deny a Rule 26(d)(1) motion that otherwise satisfies Rule 26's discovery standards."). What is more, the ground on which Defendants anticipate moving to dismiss—the factual basis of Plaintiffs' standing, *see* ECF No. 34, at 11-14—would "mak[e] discovery [at this stage] both beneficial and necessary," because the same facts that would establish Plaintiffs' irreparable harm would implicate their Article III standing, *AFL-CIO*, 349 F.R.D. at 253 n.6; *see Does*, 2025 WL 894120, at *4 ("[The D.C.] Circuit has instructed that '"it is an abuse of discretion to deny jurisdictional discovery" in light of allegations suggesting jurisdiction.'" (quoting *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1024 (D.C. Cir. 1998))).[5] On the whole, the court "cannot say reasonableness demands prohibiting expedited discovery until the resolution of defendants' [forthcoming] motion to dismiss." *AFL-CIO*, 349 F.R.D. at 253.[6]

In sum, all five factors favor granting Plaintiffs' motion for expedited discovery as to their first, third, and fourth requests for production. Accordingly, it is hereby **ORDERED** that Plaintiffs' motion for expedited discovery, ECF No. 33, is **GRANTED** in part and **DENIED** in part, and Defendants shall respond to Plaintiffs' first and fourth requests for production by October 26, 2026, and Plaintiffs' third request for production by October 28, 2026. It is further **ORDERED** that the parties shall file a joint status report on or before October 29, 2026, updating the court on the status of expedited discovery.

---

[5] This caselaw refutes Defendants' principal argument that a court cannot decide a motion for expedited discovery when the court's jurisdiction is in dispute. *See* ECF No. 34, at 11-14.

[6] Even if the fourth and fifth factors weighed in Defendants' favor, the other three factors, when considering the surrounding circumstances, outweigh them. *See AFL-CIO*, 349 F.R.D. at 254.

**SO ORDERED.**

LOREN L. ALIKHAN
United States District Judge

Date: October 21, 2026